ROSS R. WALLACE, a Minor, by ALFRED J. WALLACE, His Next Friend, Appellant, v. F. BURKART MANUFACTURING COMPANY.—3 S. W. (2d) 387.

Division One, March 3, 1928.

*Mark D. Eagleton* and *Hensley, Allen & Marsalek* for appellant.

54

*Fordyce, Holliday & White* for respondent.

GRAVES, P. J.—Action for personal injuries, by a minor through his next friend, for the alleged negligence of the defendant. The petition charged five alleged negligent acts upon the part of the defendant in this language:

"1. That the defendant did negligently and carelessly fail and omit to exercise ordinary care to furnish the plaintiff with reasonably safe tools and appliances with which to work, in that the defendant did require, cause, suffer and permit plaintiff to work with a file used for the purpose of filing parts of a cylinder, which said file was old, slick, dull and thereby incapable of properly doing the work required; all of which the defendant knew, or by the exercise of ordinary care on its part could have known.

"2. That the defendant did negligently and carelessly order, direct and require the aforesaid file in the aforesaid condition to be used under the conditions aforesaid.

"3. That the defendant did negligently and carelessly fail to make proper inspection of said file, when by so doing the defendant could have determined the fact that said file was in the condition aforesaid.

"4 That said defendant did negligently and carelessly order, direct and require the plaintiff to work with said file and to use the same in connection with a cylinder, the teeth of which were pointed in such manner as to catch plaintiff or his clothing and cause him to be drawn into said cylinder and shafting, when, in the exercise of ordinary care, the defendant could have required the cylinder to be placed in such manner that the teeth and points on same would revolve away from the plaintiff and would not catch the plaintiff or his clothing and plaintiff's place of work and method of work was thus and thereby made unsafe and dangerous and not reasonably safe.

"5. That the defendant did negligently and carelessly and in violation of the statutes of this State fail and omit to safely and securely guard said machine shafting and the parts thereof and the cylinder or drum thereon when said parts were so placed as to be dangerous to the plaintiff in the course of his ordinary duties and when it was possible for the defendant to have safely and securely guarded said parts, as aforesaid.

"Plaintiff further states that as a direct and proximate result of the aforesaid negligence and carelessness on the part of the defendant while using said file, as aforesaid, he was drawn into the aforesaid cylinder or drum and was seriously injured in this, to-wit:"

Answer was a general denial. Trial was before the court and a jury. There was a verdict and judgment for defendant, and plaintiff has appealed. The real issues can be narrowed and simplified by a little fuller statement. Learned counsel for the respondent make these statements in their brief in stating the case from their viewpoint:

"There is no question raised by appellant concerning the admission or exclusion of evidence. All points raised by appellant *concern instructions given by the trial court*.

"Appellant introduced some evidence to substantiate all of said acts of negligence charged, save one, namely, the third assignment of negligence or the failure of defendant to make proper inspection of the file in question, and this charge of negligence was withdrawn from the consideration of the jury by Instruction 4. Respondent asked instructions lettered D, E, F and G withdrawing the four other assignments of negligence charged, but these instructions were refused by the trial court, evidently because there was some evidence offered by appellant to substantiate these charges.

"*Appellant chose, after all the evidence was in at the trial of this case, to instruct the jury only on one assignment of negligence charged, namely, the failure of defendant to securely and safely guard the drum or cylinder at which appellant was working at the time he received his injuries.*

"The issue of whether or not the drum in question could be safely and securely guarded so as not to interfere with the practical operation thereof was strenuously contested. *Evidence was offered by plaintiff that such a guard could be used, while evidence was offered by defendant that such a guard could not be used.* And further, defendant showed that such a guard as plaintiff suggested, if used, would be more dangerous to the operator than if no guard was used.

"Defendant's evidence further showed that notices stating, 'These machines cannot be guarded,' were conspicuously placed around the plant, one or more being within fifty feet of the machine in question at the time plaintiff was injured.

"The verdict of the jury was for defendant, and plaintiff in due time appealed his case to this court for hearing."

We have here an admission that upon the vital question, under the submission made by plaintiff, there was conflicting evidence, and hence an admission that there was a question for the jury under proper instructions. The appellant's "assignment of errors" fully limit the questions for consideration in this language:

"The appellant now respectfully assigns that the lower court, in the trial of this cause, committed error to the prejudice of appellant as follows:

"1. That the court erred in giving defendant's Instruction 3.

"2. That the court erred in giving defendant's Instruction 5.

"3. That the court erred in giving defendant's Instruction 6.

"4. That the court erred in giving, of his own motion, Instruction 7.

"5. That the court erred in refusing to grant plaintiff a new trial because of the foregoing errors."

The foregoing is the full assignment of errors. Boiled down the appellant lodges but four complaints, and these all relate to four instructions given for the defendant. The fifth paragraph of the assignment, supra, but relates to the four previous assignments. This outlines, in a general way, the case before us. Fuller details both of facts and instructions will be left to the opinion. This suffices for a general outline of the case.

I. A careful comparison of the two statements of facts (that by appellant and that by respondent) shows substantial accord upon the material facts surrounding the injury. Both are within the record facts. That of the appellant gives a little more of the details of the evidence, and we use it for that reason, and for the further reasons that it accords with the record evidence, and also with the statement of respondent upon all vital and material issues. We quote as follows:

"It appears from the evidence that at the time of the injury, described in the petition, plaintiff was about nineteen years of age. He had been working for defendant for four days prior to the day of the accident, his injury occurring on the fifth day. On a previous occasion he had worked for defendant as assistant shipping clerk. He had been employed for about eight months in railroad shop work, and had worked for the post office. Prior to that time he was attending school.

"On August 17, 1923, and for the four days immediately preceding, he was working in defendant's factory, engaged in reconditioning drums or cylinders used in connection with defendant's cotton-combing machines.

"These drums were all about sixty inches long; they varied in diameter from four to about thirty inches. They were metal, and their surfaces were covered by small teeth, so placed as to form a thread or spiral around the drum. The teeth, from tip to base, measured about one-eighth of an inch. The grooves between the rows or threads of teeth varied in width on different cylinders, running from a quarter to one-eighth of an inch. The teeth were curved on the end. A photograph of one of the drums, and of the machine in which it was revolved when being reconditioned, appears opposite page

twelve of plaintiff's abstract. The machine was used only for the purpose of reconditioning the drums.

"There were three separate steps in the reconditioning of these drums. They were first tooled out by holding a bladed device against the surface of the drum while the same was turning, for the purpose of cleaning out material accumulated between the rows of teeth, and also cutting and straightening the teeth if they were out of line. In doing this work the top of the drum revolved toward the operator, with the points of the teeth toward him.

"In the second operation the teeth were ground by an emery wheel.

"The third step was the sharpening of the teeth. In this work the operator used a file, about ten to twelve inches long, and about one and one-half inches wide. It was fitted with a wooden handle approximately three feet long. With the top of the drum revolving toward operator, and the points of the teeth toward him, the operator held the edge of the file in the grove between the rows of teeth, moving along in front of the drum as the spiral form of the threads caused the file to advance from one end of the drum to the other. Plaintiff testified that it was necessary to apply force and energy in order to hold the file in a rigid condition or position. The teeth on the cylinder would come in contact with both sides of the file, and had a tendency to push the operator back. In doing this work the operator stood, holding the file with both hands, the end of the file handle in the right hand, at the operator's side, the left hand somewhat advanced, and the forward end of the file in the groove between the teeth. On the occasion in question, plaintiff was performing this sharpening operation, standing in the position above described. The file slipped across the top of the cylinder. His left hand, which was around the file, and his knee, came in contact with the drum, and his left arm, and his leg above his left knee cap, were caught by the teeth. He was dragged down, so that his face and shoulder came in contact with the drum, and in this position he was carried underneath the cylinder, when he lost consciousness.

"Plaintiff testified that the file he was using at the time of his injury was worn; that in using an old worn file it was necessary to employ more energy in holding it in the grooves, in order to sharpen the teeth. He said, 'You would have to be bearing down, pressing down on the file all the time to get your resistance, and you would have to hold the file sideways so it would cut, so it would catch either side of the teeth, and with an old file, if it should happen that you had pressure against it, and you got down near the end of the file in holding it on the drum, it will catch in the drum and fly back, the end of the file will catch in the drum, and the end of it will just fly over, and with the pressure you are putting on it, you would be throwed off your balance, as the end of the file is

carried over with the drum, and that would let you forward right into the teeth of the cylinder.' Plaintiff had no experience in doing this work when he was employed by defendant four days prior to the accident. He was turned over by defendant's superintendent to the machine-shop foreman, who assigned a man named Brown to instruct plaintiff regarding the work. Brown gave plaintiff instructions for about one-half a day. Plaintiff then did the work himself up to the time of his injury. During this time he was doing all three of the operations described above, in the reconditioning of the cylinders.

"There were four or five files, of different thicknesses, kept in a cabinet near the machine, and in sharpening the teeth it was necessary to use a file corresponding with the width of the groove on the cylinder. A number of these files were badly worn and slick, and plaintiff, prior to his accident, had so informed the defendant's superintendent on several occasions. The superintendent told him that he could have a new one as soon as they came in, and he would have to get along until the new ones came."

The remainder of appellant's statement goes to the facts, in evidence, as to whether or not the machine upon which plaintiff was working could be guarded. We have quoted, supra, respondent's admission that upon this question there was evidence both ways, and thus there was a simple jury question.

II. The outline of facts, supra, will form the basis for a discussion of the alleged errors in instructions given at the request of the defendant. It is always a matter for careful thought and action upon the part of the court and counsel for the defendant, when as here, several grounds of alleged negligence are contested, but all abandoned, save one, when the plaintiff comes to the point of finally submitting his case. This is fully illustrated by the very recent case of Schulz v. Smercina, 1 S. W. (2d), l. c. 119, wherein, in speaking of withdrawal instructions, we said:

"But why such an instruction in this case? The fifth charge of the petition had been abandoned by plaintiff, and was as *fully out* of the case, upon submission by plaintiff, as it was after the giving of this instruction for defendant. Or, if a withdrawal was thought necessary, it could have been done in a way which would not have been misleading and prejudicial. The instruction is highly misleading and should not have been given. This is the least which can be said of this instruction."

The criticized instructions in this case are not strictly withdrawal instructions, but two of them (5 and 6) deal with an abandoned issue, and it is claimed prejudicially dealt with such abandoned issue,

to the great detriment and injury of plaintiff in the consideration of his case by the jury. These four instructions read:

"3. This action is based upon the alleged negligence of the defendant, that is, plaintiff claims that the defendant was negligent, and careless in certain particulars. That alleged negligence cannot be assumed or presumed, but the plaintiff before he can recover must prove by the preponderance or greater weight of the evidence that the defendant was negligent in one or more of the particular manners alleged. If he has failed to meet this burden he cannot recover. If in your judgment the weight of the evidence is evenly balanced, or preponderates in favor of the defendant, then your verdict must be against the plaintiff and in favor of the defendant.

"5. The court instructs the jury that the standard of care required by law as to the furnishing of files and the manner of revolving the cylinder in question is ordinary care, that is, such care as an ordinarily prudent man, under the same or similar circumstances, would exercise for his own safety or that of his employees, and unless you find and believe from the evidence that defendant failed to exercise such care as an ordinarily prudent man, under the same or similar circumstances, would exercise for his own safety or that of his employees, and unless you further find that such failure on the part of the defendant to exercise such ordinary care was the direct or proximate cause of plaintiff's injury, then your verdict on these issues must be against the plaintiff and in favor of the defendant.

"6. The court instructs the jury that even though you may find and believe from the evidence that the file in question in this case was old, worn, slick and dull, if you do so find, still if you further find and believe from the evidence that defendant had on hand at all times proper files for use in said work which plaintiff was doing, and if you further find and believe from the evidence that plaintiff had been instructed to secure a new file whenever the same was necessary, if you do so find, and if you further find and believe from the evidence that plaintiff failed to obey said instructions and secure a new file when the same became necessary, if you do so find, and if you further find and believe from the evidence that such failure on the part of the plaintiff to procure a new file was the direct or proximate cause of plaintiff's injury, if you do so find, then in such case the court instructs the jury as a matter of law that the defendant was not guilty of negligence in the file furnished plaintiff, and you cannot find for plaintiff upon this assignment of negligence.

"7. What constitutes 'ordinary care' as mentioned in these instructions depends on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case with

reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions."

With these instructions before us, we take up next the alleged error in giving them, under all the circumstances.

We shall first consider Instructions 5 and 6, in as much as they contain reference to abandoned issues. This court, in addition to what we have quoted, supra, from the Schulz case, has spoken with firmness upon the question. Instruction 5, supra, deals with the question of furnishing files. This allegation of negligence with reference to the furnishing of an alleged defective file was absolutely abandoned in the submission. The same is true as to the manner of revolving the cylinder mentioned in Instruction 5, supra, and in paragraph 4 of the petition alleging negligence. Paragraph 4 of the petition, as to the negligence charged therein, was wholly abandoned in the submission. All that is submitted in Instruction 5 is clustered around the alleged duty of defendant, "as to the furnishing of files and the manner of revolving the cylinder in question." Both of these issues were wholly abandoned in the submission, as we have indicated. The submission of the question only tended to confuse the jury in determining the one issue of the failure to guard the machine. We said in the Schulz case, supra, that such instructions are not only misleading and confusing, but highly prejudicial.

In Denkman v. Prudential Fixture Co., 289 S. W. 591, we had up the question of an abandoned issue. In that case, however, the defendant, in asking and securing an instruction, treated as abandoned an issue which had been, in fact, abandoned by the plaintiff in the submission. In 289 Southwestern, at page 596, ATWOOD, J., said:

"Appellant urges the giving of the foregoing instruction as reversible error, because it makes no reference to any assignment of negligence except defendant's alleged failure to safely and securely guard the knives of the machine.

"In reply, it may be said that plaintiff offered a number of instructions on his theory of the case and specified the above ground of negligence, but referred to no other. In 38 Cyc. 1637, it is said on good authority: 'A request that specified issues be submitted to the jury operates as a waiver of the submission of all other issues.'

"*If plaintiff thereby waves submission of the omitted issues, why should the trial judge, in submitting other instructions, consider that such issues are any longer in the case?* Having thus sought to instruct on his own case, and having stood mute as to any other ground, while defendant asked and received the above instruction presenting this theory of defense, plaintiff should not now be permitted to convict the trial court of misdirection. We so ruled in Nahorski

v. St. Louis Electric Terminal Ry. Co. (Mo. Sup.), 274 S. W. 1025, and on principle the precedent appears to be sound."

The appellant in this Denkman case, was the plaintiff. Further on Judge ATWOOD, said:

"We have long condemned the act of counsel in declining to ask an instruction setting fourth the facts entitling plaintiff to recover, and thus forcing the court to give one, of its own motion, covering plaintiff's theory of his right to recover. [Eversole v. Wabash Railroad Co., 249 Mo. 523, 1. c. 529, 155 S. W. 419.] If such candid evasion of duty is to be thus sharply condemned, though we have not yet held that its indulgence constitutes reversible error, how can we look with favor upon a complaint of misdirection in the court's failure to regard a theory of the case which counsel themselves have omitted from their own charge to the jury on the case? Whether such omission in any case is, in fact, intended as an abandonment of such theory, or whether it is prompted by laziness, laches, or guileful design, when the trial court acting thereon gives other instructions treating the omission as an abandonment, plaintiff will not thereafter be heard to say that the jury should have been permitted to consider such theory."

The same judge had the question before him in Nahorski v. Electric Terminal Ry. Co., 310 Mo. l. c. 237, whereat it is said:

"But, plaintiff says she pleaded and proved facts which entitled her to go to the jury on the last-chance doctrine, and she contends that the court committed error in giving instruction numbered 7 because it precluded the jury from a consideration of this theory. Plaintiff asked and received instructions on every other theory presented in the case. On the last-chance doctrine her counsel stood mute and asked no instruction. *Instructions should be confined to issues insisted on at the trial.* [38 Cyc. 1636.] The practice of a party standing by and asking instructions on one or more theories on which he relies and seemingly abandoning another which he has also pleaded and sought to prove is to be condemned. [Leaho v. Goode, 67 Mo. 126.] This defendant had a right to ignore such abandoned theory in his instructions asked. If they precluded the consideration of any theory relied on by plaintiff she should then have spoken or now hold her peace. By her silence the last-chance doctrine fell out of the case (Keele v. Railroad, 258 Mo. l. c. 75) and she is now estopped to complain of this instruction. Such is the reasoning even in Sweet v. Bunn, 195 Mo. App. l. c. 502, cited by appellant."

On the other hand, however, if the plaintiff, in the submission, abandons one or more issues of his alleged negligence, the defendant should treat them as abandoned, and request his instructions accordingly. And, further, the court, knowing that certain pleaded issues have been abandoned in the submission should confine the instructions

given to the issues, in fact, submitted. Juries should not be burdened with the consideration of abandoned issues. They are too often misled by such course. Such instructions must be condemned as submitting irrelevant issues to the prejudice of the plaintiff. Instruction 6 is just as erroneous and prejudicial. It, like ·Instruction 5, covered the abandoned issue as to files furnished. So too, in Dietzman v. Screw Company, 300 Mo. 1. c. 215, the writer with the full concurrence of all the court, said:

"In the above we have covered all the points made and briefed by appellant in the brief, except points five and six, and these we take together.

"Point five alleges error upon the part of the court in refusing to give Instructions 5, 6 and 9. These instructions were instructions withdrawing from the jury certain assignments of negligence made in the petition, and especially that assignment relating to screening and hand-railing. It suffices to say that plaintiff abandoned all these assignments of negligence when she came to submit her case to the jury. As said, the case was submitted upon a single issue which we have discussed. The refusal of these instructions could work no harm in this situation."

The giving of Instructions 5 and 6 was error, and error to the prejudice of the plaintiff. The giving of either suffices for the reversal of the judgment herein and the remanding of the cause.

III. Instruction 3, supra, is criticized, and we think rightfully so. The instruction starts out by telling the jury that "plaintiff claims that the defendant was. negligent and careless in certain *particulars.*" Note the plural "particulars." This clearly refers to the divers grounds of negligence pleaded, yet all were abandoned save one. But the real vice of the instruction lies in the last sentence, which reads: "If in your judgment the weight of the evidence is evenly balanced, or preponderates in favor of the defendant, then your verdict must be against the plaintiff and in favor of the defendant." In the brief of respondent, in speaking of the evidence upon the several assignments of negligence in the petition, it is said: "Appellant introduced *some* evidence to substantiate all of the acts of negligence, save one, namely the third assignment of negligence, or the failure of defendant to make proper inspection of the file in question, and this charge of negligence was withdrawn from the consideration of the jury by Instruction 4." In other grounds the file was alleged to have been defective. Now the point is well made, that the last sentence of the instruction, quoted, supra, permitted the jury to consider evidence upon the several abandoned charges of negligence in determining whether or not the

weight of the evidence was evenly balanced, or preponderated in favor of the defendant. The complaint is well founded. The jury should have been told to consider only the evidence upon the single issue submitted i. e. whether or not the place or machine could have been guarded.

In Williams v. Tucker, 224 S. W. l. c. 21, the Springfield Court of Appeals had before it a somewhat analagous situation, and that court said:

"There seems to me to be a graver error in this instruction than that of merely referring the jury to the pleadings for the issue, and that is this (quoted from the instruction): 'And before you can find the issues for the plaintiff, you must find that the collision complained of was the result of defendant's negligence as charged.'

"On turning to the pleadings, we find that there were three acts of negligence charged, and there was evidence offered in support of the three acts as charged. This instruction, then, is certainly open to the construction that, before plaintiff can recover, he must show that the defendant was guilty of all three of the acts of negligence laid at his door in the pleadings and in the evidence. This, of course, is casting a greater burden upon the plaintiff than he should have borne, because the proof of any one of the acts to the satisfaction of the jury would have sustained a verdict of recovery."

The court was *discussing* a burden of proof instruction. Instruction 3, challenged in this case, is a burden of proof instruction. In our judgment the above from FARRINGTON, J., of the Springfield Court of Appeals is sound law, and it condemns this Instruction 3 in our case.

There may be error in Instruction 7, but as this case must be reversed and remanded for the errors above pointed out, we shall not discuss it. Error, if any therein, can be obviated upon a retrial of the case. We tried to make it clear in Schulz v. Smercina, supra, that defendants were treading upon dangerous ground when instructions involving abandoned issues were sought and obtained. Such instructions tend to divert the mind of the jury from the issue before them, and are always prejudicial. Cases cited by respondent either miss the point here discussed, or are cases wherein the point here discussed was not raised.

The judgment *nisi* is reversed, and the cause remanded. All concur.