FRED BIRD v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant. —78 S. W. (2d) 389.

Division Two, January 7, 1935.

*E. T. Miller* and *Mann, Mann & Miller* for appellant.

318

*Norman & Norman* for respondent.

TIPTON. J.—This case comes to the writer on reassignment. In the Circuit Court of Jasper County, the respondent recovered a judgment for eleven thousand dollars ($11,000) against the appellant for personal injuries received about seven-thirty P. M., on December 13. 1929. at Cherokee, Kansas.

The respondent was in the employ of the appellant as a rear brakeman. It is admitted that both respondent and appellant were engaged in interstate transportation at the time the respondent was injured. The train on which the respondent was working was enroute from Afton, Oklahoma, to Fort Scott, Kansas. At Cherokee, the appellant had tracks running north and south and also east and west. At the southwest corner of the intersection of these tracks was the deposit. About two and one-half blocks north of the depot is a concrete coal chute.

To get from the east and west track onto the north and south track the entire train had to pull over one leg of the Y and then back up. This was done on the night the respondent was injured, leaving the engine headed north. As the train backed down the main line, the respondent rode the rear end back and when he got to the main

line crossing he got off and went to the depot and obtained the switching orders and found there were some cars on track 3 to be put into the train. While he was getting these orders, the engine took water and then coal.

Under the rules, if there are more than fifteen cars in the train, the engine must be detached when it is spotted at the coal chute. There were more than fifteen cars in this train. After getting the switching orders, the respondent went over to track No. 3 to line up these cars, so that they could be put into the train. At this time he heard the engine taking on coal. When the respondent had lined up these cars, he went to the north part of the yard and waited until the head brakeman brought the engine back and coupled on to them. Respondent rode either the last or the next to the last car and the head brakeman rode near the engine to the main line. When these cars got on the main line the respondent gave a stop signal, crossed over this track, threw the switch and then gave a back up order. He then crossed back over these tracks. After these cars were coupled on the rest of the train, he walked south on the east side of the train with a lantern in his hand. The engineer gave a signal that he was ready to depart and respondent turned facing the north and answered this signal; he again turned and took a step or two and stumbled and fell into a pile of coal opposite the coal chute and a part of his foot was crushed by the moving train so that it had to be amputated. This pile of coal was on the east side of the track and in the path where he had to walk; while the coal chute was on the west side of the track.

There was testimony to the effect that on several occasions piles of coal had been spilled there when engines were being coaled in the manner that this engine was coaled.

Appellant kept a man at this chute in the daytime to clean up any coal that might be spilled, but did not keep a man there at night.

Respondent's theory of the case is that this coal was spilled when this engine took on coal, as a witness testified, he walked up the track a few minutes before the train came in and there was no coal there at that time.

Other pertinent facts will be stated in the course of this opinion.

I. (a). The appellant contends its instruction in the nature of a demurrer should have been given.

The respondent's petition contained three charges of negligence. He did not seek any instruction covering two of these assignments of negligence, therefore, for the purpose of this appeal he abandoned them. [Nahorski v. St. Louis E. T. Railroad Co., 310 Mo. 227, 274 S. W. 1025; Crossno v. Terminal Railroad Assn., 328 Mo. 826, 41 S. W. (2d) 796; Wallace v. Burkhart M. Co., 319 Mo. 52, 3 S. W. (2d) 387, and Denkman v. Prudential F. Co., 289

S. W. 591.] This leaves only one charge of negligence in the petition. The petition thus stripped of it verbiage, in effect charges that "said train stopped at the coal chute in Cherokee, Kansas, for the purpose of coaling said engine" and "that the servants and agents of the defendant (appellant) carelessly and negligently, in coaling said engine, caused and permitted a large quantity of coal to fall on the east side of said tracks" and that "plaintiff (respondent) while inspecting the train aforesaid, stepped into said pile of coal and tripped and fell" and received certain injuries.

The appellant raises the question that the instruction directing a verdict given at the request of the respondent, did not follow the petition and it presented a different theory of negligence from that authorized by the petition. This instruction in effect told the jury that if the appellant knew or by the exercise of ordinary care on its part could have known of the presence of the coal in time by the exercise of ordinary care to have removed it before respondent fell on it, their verdict should have been for respondent.

In the case of Hicks v. Mo. Pac. Railroad Co., 225 Mo. 1053, 40 S. W. (2d) 512, the Kansas City Court of Appeals said:

"A finding that defendant negligently caused and permitted the brake shoe to remain in a dangerous position and location is equivalent to a finding that the defendant knew the position and location of the brake shoe. [Berberet v. Electric Park Amusement Company, 319 Mo. 275, 3 S. W. (2d) 1025, 61 A. L. R. 1269.]

"It has been said 'permit' is not synonymous with 'allow' and 'suffer.' It is a much more positive term denoting 'a decided assent.' [Winslow v. M., K. & T. Railroad Co. (Mo. App.), 192 S. W. 121, 122.]"

"A finding by the jury that the defendant negligently caused and permitted the condition mentioned is equivalent to a finding that the defendant knew the condition to exist." [Morton v. Southwestern Telegraph & Telephone Co., 280 Mo. 360, 217 S. W. 831.]

To the same effect are the following cases: Johnson v. Chicago & E. I. Ry. Co., 334 Mo. 22, 64 S. W. (2d) 674; Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 18 S. W. (2d) 408.

We hold that an allegation in respondent's petition that appellant carelessly and negligently caused and permitted coal to fall on the east side of the track is equivalent to stating that appellant knew that the coal was there.

"On demurrer, the plaintiff is entitled to have taken as true all evidence tending to support his case, and is to be given the benefit of all inferences in his favor that may reasonably be drawn from the facts such evidence tends to prove." [Johnson v. Chicago & E. I. Ry. Co., supra.]

The Federal Employers' Liability Act governs this cause of action and it makes the appellant liable for the negligence of any of its employees.

The evidence in this case shows that on December 13, 1929, the train on which the respondent was the rear brakeman arrived at Cherokee at six-thirty P. M., and departed at seven-thirty-five. That after it was switched on to the north and south track from the east and west track it first took water and then coal. It is admitted by both parties that there was no coal at the place where the respondent claims he was hurt when the train first arrived. The evidence shows that it was the duty of respondent to inspect the cars before the train departed from Cherokee, which he was doing at the time of his injury. Respondent testified that he was walking on the east side of the track inspecting the cars as the train started out, expecting to catch the caboose as it passed. As he was opposite the coal chute he stepped into a pile of coal which was about two and a half or three feet wide; eight or ten inches high; and about five or six feet long.

It is true that C. R. Townsend, the fireman testified that: ''The amount of coal I took did not fill the tender'' and that ''As I took coal there that night I did not let any of the coal escape over the side of the tank of the engine and onto the ground while I was there.''

The appellant contends that the testimony of Townsend destroys the inference or circumstance that the coal was spilled while the engine was being coaled. The appellant says in its brief, ''where there is any evidence touching any disputed fact, no presumption relating thereto may be indulged, even though this evidence comes from defendant's witness,'' and cites cases of the type of Mockowik v. Kansas City, St. J. & C. B. Railroad Co., 196 Mo. 550, 94 S. W. 256; Burge v. Wabash Ry. Co., 244 Mo. 76, 148 S. W. 925; and Dyrcz v. Missouri Pacific Ry. Co., 238 Mo. 33, 141 S. W. 861. These cases are not in point because they deal with a presumption and not inferences or circumstances. The fact that there was no coal there before the engine was coaled, and that there was coal at this place after it was coaled is an inference or circumstance that the coal was spilled by the fireman as he was coaling the engine. The testimony showed on several prior occasions, coal was spilled by a member of an engine crew while the engine was being coaled.

''While proof of such acts of appellant's employees may in a sense be held to be collateral, an inference of fact is authorized to be drawn therefrom bearing upon the particular act of negligence which rendered the testimony admissible.'' [Lock v. Chicago, Burlington & Quincy Ry. Co., 281 Mo. 532, l. c. 541, 219 S. W. 919.]

When we take into consideration the size of the pile of coal, its location, and the fact that coal had been spilled thereon previous occasions when the engine had been coaled, and the fact that the appellant kept a man there during the day to clean up any coal that may be left there, we think that this is substantial evidence to

show that the coal was spilled there while this engine was being coaled and the jury had a right to disregard the positive testimony of the fireman, that he did not spill any coal when he coaled the engine. [Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950.]

Appellant next contends that, ''Assuming for the present purposes that under the pleadings plaintiff is not confined, in order to recover, to prove that the coal over which he stumbled, fell to the ground while coaling the engine of his train, but may recover upon proof that the coal was there with knowledge, actual or constructive, of the defendant (a theory presented by his Instruction No. 1). In that event, we say that no case was made for the jury because there is no evidence as to when or how the coal got on the ground or whether it was placed there by or as a result of some act of defendant's employees or that defendant knew that it was there or that it had been there long enough to charge defendant with notice of its presence and to give it a reasonable time within which to remove it.''

We have just held that there is sufficient substantial evidence to show that the coal was spilled when the engine of respondent's train was coaled.

Respondent's duties required him to walk along the east side of the track. While the appellant was not an insurer of his safety, yet it was its duty to provide the respondent a reasonably safe place to work, and free from any obstacles which would be likely to cause him to stumble or fall. If a pile of coal got in the path where the respondent was required to walk it was the duty of the respondent to remove the same, within a reasonable time after it acquired knowledge it was there, and this is true, whether the coal was negligently spilled or not. [Lock v. Railroad, supra.] It is the duty of the employer to exercise ordinary care to furnish his employees a reasonably safe place to work, regard being had for the nature and the character of the work. Hawkins v. Railroad, 189 Mo. App. 201, '' 'Reasonable care' means care commensurate with the dangers of the employment. What would be reasonable care in one case might be gross negligence in another.'' [Johnson v. Kansas City Bolt & Nut Co., 172 Mo. App. l. c. 219, 157 S. W. 665.] This duty to furnish the employee a reasonably safe place to work is a continuing one. [Myers v. Pittsburgh Coal Co., 233 U. S. 184, 58 L. Ed. l. c. 906, 910.]

The testimony is that the train was in Cherokee an hour and five minutes. As before stated the engine took water and after it was uncoupled from the train, it then took coal. The rest of the time was spent in switching. So, it could be fairly presumed that most of the time the train was at Cherokee was spent in switching. The fireman testified that he did not spill any coal when he coaled the engine. The jury chose not to believe this testimony. He stood

upon the tender when he took coal. If he spilled any coal he would evidently have known it, and his knowledge would have been the knowledge of the appellant. If we give the respondent the benefit of the reasonable inferences to be drawn from the evidence, we believe the jury would be warranted in concluding that the appellant had actual knowledge that the coal was spilled shortly after the arrival of the train at Cherokee.

Appellant in its brief says: ''It was shown by plaintiff's witnesses that defendant had, at this coal chute, a coal chute foreman, Chauncy Longton, who was on duty daily from eight A. M. to four P. M., and that it was part of his duty, or at least that he did, promptly remove any coal that fell to the ground near the coal chute.''

We think what the Springfield Court of Appeals said in the case of Hawkins v. Railroad, supra, 1. c. 219, is very appropriate to the question here. It is as follows:

''Taking the plaintiff's evidence as true that it was not his duty to see that tools were not scattered around the stalls and that he was not expected to be on the lookout for such obstacles on the floor as he knew of the master's posted rule and was not bound to presume it would be violated, in connection with the inference fairly deducible from the evidence that it was an employee of the day shift who committed the act of negligence, and the fact that defendant had two sweepers whose duty it was before plaintiff went on duty to pick up jacks and other tools negligently left on the floor, must we say that it is *not even a jury question* whether defendant was guilty of actionable negligence in failing to discover the dangerous condition *merely because defendant did not employ any one at night to be its vice-principal in this respect?* If so, a specific for liability for injuries to employees has been discovered. The master cannot thus wash his hands of responsibility. The evidence for the plaintiff, considered in the aspect most favorable to plaintiff, does not show that he was defendant's vice-principal for the purpose of inspecting stalls for tools that may have been left by a day employee in violation of the rule. A reasonable man might say it was the duty of the general foreman of the roundhouse to look after such matters for the defendant, as both Ryan, the day foreman, and plaintiff, the night foreman, were subject to his orders; or he might say it was the duty of the two men hired by defendant, for the express purpose of cleaning up after the workmen—and according to the testimony given at the trial these two men remained on duty for perhaps an hour after the day shift quit. If defendant did not see fit to provide men at night to see to it that the day shift had put up their tools, it must suffer the consequences; at least, it must be willing to introduce its proof and let the jury say whether it had fulfilled its obligation to its employee or whether it had shown that the employee was its vice-principal in the particular case. We

think it was a jury question whether the jack had remained on the floor of the stall a sufficient time for defendant in the exercise of reasonable care to have discovered or removed it before the time the injury occurred.''

We do not believe the cases cited by the appellant are in point, because in those cases there were permanent objects in the pathway, as the case of Delaware, Lackawanna & Western Railroad Company v. Koske, 279 U. S. 7, 73 L. Ed. 578, will show. In that case the railroad was held not to be negligent in maintaining an open ditch eight to eleven inches in depth and eight to twenty-four inches wide, between its tracks in a railroad yard for drainage purposes, so as to render it liable for injuries to a switchman, who had been employed in the yards for many years, and fell into the ditch while alighting from an engine.

We believe, under the circumstances of this case it was a question for the jury to say if the appellant knew or by the exercise of due care on its part to have known of the pile of coal in the pathway of respondent and that the appellant had sufficient time to have removed it before the respondent was injured.

(b) The appellant contends that respondent ''assumed the risk as a matter of law and for that reason the demurrer to the evidence should have been sustained and defendant's Instruction No. 3 should have been given.''

The rule of the Federal Courts as to assumption of risk is stated in the case of Gila Valley, G. & N. Ry. Co. v. Hall, 232 U. S. 94, 58 L. Ed. 521, l. c. 524: '' 'The true test is not in the exercise of ordinary care to discover dangers, by the employee, but whether the defect is known or plainly observable by him. An employee is not charged by law with the assumption of a risk arising out of defective appliances provided by his employer, unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to the use of such appliances.' This, we think, was a correct instruction under the circumstances of the case. An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it

endangered his safety; or else danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it."

With the above rules in mind, a reading of the evidence in this record would be sufficient to show that there is no assumption of risk in this case. On this point the respondent testified as follows:

"Q. Did you ever before this time see along this coal chute, along this part of that track, on either side of the main line track there at the coal chute, where the men walk, see any lumps of coal there at all? A. Not on that side, the east side, no, sir.

"Q. You say you had seen some lumps, but where were they? A. They were underneath the chute there.

"Q. Did the men, where you saw that coal, did the men have to walk along there, working there by that coal? A. No, sir.

"I have ridden by this place when the train would not stop there and have had occasion to notice the condition of the track there. In riding by there in the daytime I had not seen any coal along on the east side of the main line track. I never had anything to do with the operation of the chute.

"Q. I will get you to tell the jury whether or not you knew that the Frisco didn't have a night man at the chute? A. I don't know whether they had one or not. I don't know anything about their coal chute. That was none of my affair.

"I had nothing to do with the coal chute, or the cleaning up of any coal at all. Prior to the time that I fell there I had not been up by the coal chute at all that night. In my work of thirteen years there with the Frisco, working out of Fort Scott, I did not at any time have a position whereby I worked at Cherokee. My work just carried me back and forth through there. Outside of my lantern there was no other light up there at the coal chute, burning. There were no lights on the east side of the track there where we were walking."

There was no evidence to contradict the respondent, and we hold as there was no evidence of assumption of risk the court properly refused to sustain the appellant's demurrer and also properly refused to give Instruction No. 3 which directed a verdict for appellant, on the theory that respondent assumed the risk of falling over the pile of coal that he did not know was there.

■ II. The appellant claims that Instruction No. 1 is erroneous in that it broadens the issue made by the pleading in that the instruction did not require the jury to find that the coal over which respondent fell was spilled when this engine was coaled. It was conceded that by both respondent and appellant that the coal was not there before this engine was coaled. It is not error for an instruction to omit a conceded fact. [Miller v. Collins, 328 Mo. 313,

40 S. W. (2d) 1062; Fleming v. Contracting Corp., 45 S. W. (2d) 952.]

Appellant also challenges this instruction because it directs a verdict but ignores the appellant's plea of assumption of risk. We have already held that there was no evidence of assumption of risk in this case. If there was no evidence of assumption of risk, it was not error to omit this issue in the instruction. It is just as essential that there should be proof of assumption of risk as there should be an allegation relying on this defense. If assumption of risk is not pleaded, of course, an instruction should not be submitted, and so if pleaded and there is no evidence to support the plea, the instruction should not include this element. [Laughlin v. Kansas City Southern Ry. Co., 205 S. W. 3, 275 Mo. 459; Chesapeake & Ohio Ry. Co. v. Cooper, 168 Ky. 137, 181 S. W. 933.]

Other assaults are made on this instruction but we have already disposed of them in passing on the demurrer to the evidence.

■ III. Appellant next complains of the instruction of the measure of damages. This instruction is as follows:

"The court instructs the jury that if you find your verdict for the plaintiff you will, in assessing his damages, if any, his bodily pain and mental anguish, if any, suffered as a direct result of said injuries, if any, and award him such sums as you believe from the evidence will reasonably compensate him for such bodily pain and mental anguish he has and will suffer, past, present and future, as a direct result of such injuries, if any; you will also award to him such sum as you believe from the evidence will reasonably compensate him for any loss of earnings he has sustained from the date of his injuries, if any to the present time, if any, as a direct result of such injuries; you will also take into consideration any impairment of his ability to earn money in the future, if any, that you will find from the evidence he will suffer as a direct result of his injuries, if any, and award him the present cash value of such future impairment of earnings, if any, and if you find your verdict for the plaintiff, you will bring in your verdict in one lump sum."

The complaint leveled at this instruction is that it ignored the defendant's plea of contributory negligence and did not require the jury to reduce the amount of the verdict in the proportion that respondent's negligence bore to the combined negligence of both respondent and appellant.

The Federal Employers' Liability Act, 45 U. S. C. A., section 53, provides that in event that the injured employee was guilty of contributory negligence his "damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Appellant charged that respondent "knew, or by the

exercise of ordinary care could have known of the presence of said coal near defendant's track, in time to have avoided coming in contact therewith; that plaintiff either did not look for coal or other obstructions along or near the track, which he saw, or by the exercise of ordinary care could have seen."

"Defendant alleges that said acts and omissions of the plaintiff were negligent and that said acts of negligence, taken separately or concurrently, directly contribute to cause whatever injuries plaintiff received."

Respondent contends that appellant's plea of contributory negligence is not good under the Federal Employers' Liability Act because it is a plea in bar to the action and is not interposed in reduction of damages. We have so held in the case of O'Donnell v. B. & O. Railroad Co., 26 S. W. (2d) 929, 324 Mo. 1097. In that case we said: "It will be observed the answer does not allege the negligence specified *contributed* to decedent's death, but charges it directly and proximately caused it." While in the case at bar the answer stated that respondent's negligence *contributed* to cause whatever injuries he received. We hold that the answer in this case properly pleaded contributory negligence under the Federal Employers' Liability Act.

In the case of Moran v. A. T. & S. F. Ry. Co., 330 Mo. 278, 48 S. W. (2d) 881, we held if neither party requested an instruction on the measure of damages and no instruction was given on that subject, it would be nondirection and therefore, not error. No other instruction was given to the jury which directed them, in event they found respondent contributorily negligent, to reduce the amount of his damages in proportion to his negligence. If there is no evidence of contributory negligence this instruction is not erroneous. [Laughlin v Railway, supra: Hawkins v. Mo. Pac. Railroad Co., supra: L. & N. Ry. Co. v. Mount, 35 Fed. (2d) 634.] On the other hand, if there is evidence of contributory negligence this instruction is one of misdirection and, therefore erroneous. [Seaboard A. L. Ry. Co. v. Tilghman, 237 U. S. 499, 59 L. Ed. 1069.]

The testimony shows that at the point where respondent fell was opposite the coal chute and that the engine had just taken coal. That just south of the coal chute in his path as he walked there were rails that he must step over. When injured, he was carrying a lighted lantern and when he got within a step or two of the place where he fell he turned to give a signal to the engineer. Then after giving the signal he took a step or two before he fell over a pile of coal, which he described as "about 2½ or 3 feet wide, and 8 or 10 inches high and 5 or 6 feet long."

We think the jury would have been warranted in finding, that as he walked toward this pile of coal, that he could have seen it with the aid of the lighted lantern that he was carrying, if he had used

ordinary care to look where he was walking, and the jury might conclude that he was negligent in failing to see it or in stepping in to it, if he did see it. While we are not holding that he was guilty of contributory negligence, as a matter of law, yet we do hold that there is some evidence that he was guilty of contributory negligence.

We hold that under the evidence this instruction is erroneous and constitutes prejudicial error.

Other assignments of error will not be discussed as they will propably not reoccur in the retrial of this case.

For error in the instruction on the measure of damages, the cause is reversed and remanded for a new trial. It is so ordered. All concur.