Curtis Eugene REHKOP, a Minor, by His Father and Next Friend, Leland E. Rehkop, Appellant,

v.

Harry HIGGINS, Respondent.

No. 45918.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1957.

David J. Dixon, Pine & Dixon, Warrensburg, for appellant.

John T. Martin, Martin & Gibson, Sedalia, for respondent.

WESTHUES, Judge.

Plaintiff, by his father and next friend, filed this suit against Harry Higgins to recover damages for personal injuries sustained on June 27, 1955, when plaintiff was struck by a car driven by Higgins on State Route J in Johnson County, Missouri. Plaintiff asked $25,000 for his injuries. A trial resulted in a verdict for the defendant and plaintiff appealed to this court.

Plaintiff briefed two points claiming the trial court erred in giving instructions 8 and 9 requested by the defendant. Plaintiff says that instruction 8 is an "accident" instruction and should not have been given because it was not justified by the evidence; that instruction 9 submitted an abandoned issue of negligence and was therefore misleading and confusing.

Plaintiff was injured about 3¾ miles south of Concordia on Route J which at that point was surfaced with gravel for a width of 20 to 24 feet. We noticed from the photographs introduced in evidence that the surrounding territory is rolling and the roadway running in a north-south direction is fairly level. On the day in question, plaintiff, a boy 5 years old at the time he was struck, and a younger brother were at the home of their grandfather, Herman Paul, whose home was located on the west side of Route J. About nine o'clock in the morning of that day, Albert Luebbert, who lived on a farm south of the Paul place, drove to the Paul farm in a pick-up truck and parked it in the driveway north of a barn located near the road. This truck was headed toward the west with the back end thereof a few feet from the gravel portion of the road. About this time, Mr. Paul and a nephew, who were cutting weeds along the east side of the roadway with a tractor drawing a mower, arrived at a point opposite the driveway. Intending to converse with each other, Luebbert got out of his truck and Paul off the tractor. At this time the defendant was driving north on Route J. Luebbert, by this time was at the rear of the truck on the south side thereof and Paul was standing on the east side of the road by the tractor. Luebbert and Paul both saw defendant's car approaching at a speed of about 50 miles per hour. Before Higgins reached the place where the truck and tractor were standing, he turned his car toward the center of the road. Note the evidence of the defendant as to what he did immediately before his car struck plaintiff:

"A. * * * As I came down the incline I became conscious there was some objects ahead that caused me to be on the alert. I came out of this swale and became aware there was a tractor and a truck ahead of me and there were people on both sides of the road. As I realized that I momentarily let up on the footfeed and as I got closer I soon saw they were watching me and I resumed my speed, going possibly about the same speed I had been traveling on the road prior to that time. As I approached the scene and got very close to those vehicles on both sides of the road a little boy ran out in front of me. I put on my brakes just as quick as I could * * *."

Defendant further testified that plaintiff, running eastward, turned abruptly to the north just before reaching the center of the roadway; that to avoid striking the child, he, defendant, turned to the left intending to pass behind the child, but that when he saw the child turn left, he swerved to the right and about that time he struck the boy causing him to be thrown into the air and as he came down he fell against the front portion of the hood of the car and was then thrown to the right or east side of the roadway into a ditch 100 feet or more north of the point of the first impact.

The material dispute in the evidence was with reference to the point in the roadway

where plaintiff was struck by defendant's car, the distance defendant's car was from the parked truck at the moment plaintiff ran out from the north side of the truck, and the distance from the rear of the truck to the graveled portion of the roadway. Plaintiff's evidence, given by Luebbert and Paul, was that the boy came from behind the truck and could have been seen by the defendant when defendant was 150 feet or more south of the truck; that plaintiff after he reached the gravel roadway, ran north away from the truck and the point of impact was about 30 feet north of the truck at the west edge of the graveled portion of the road. Defendant testified he saw the boy at the moment he came from behind the truck and that he was then only 40 to 45 feet from the truck and that the point of impact was only a foot or two to the left of the center of the highway. The only dispute as to where the truck was parked was that defendant's evidence was that the rear of the truck was a few feet closer to the gravel than claimed by plaintiff's witnesses. That plaintiff was seriously injured was conceded.

The case was submitted to a jury on charges of negligence by instruction 1. The portion of the instruction wherein the negligence was submitted reads as follows: "* * * and if you further find and believe from the evidence that the defendant, Harry Higgins, drove and operated said automobile at a high and dangerous rate of speed, under the facts and circumstances then and there existing, and that the defendant, if you so find, failed to keep and maintain a vigilant watch and lookout for persons walking, running or being upon said roadway, including the plaintiff, Curtis Eugene Rehkop, and if you further find from all the facts and circumstances in evidence that the defendant, Harry Higgins, should have sounded the horn of the automobile which he was driving at said time and place in the exercise of the highest degree of care, if so, so as to give the plaintiff, Curtis Eugene Rehkop, warning of the approach of said automobile and that the defendant failed to do so, if you so find, and that the defendant, Harry Higgins, if you so find, failed to stop said automobile or reduce the speed thereof so as to prevent said automobile from running into and colliding with the plaintiff, Curtis Eugene Rehkop, and if you further find from the evidence that said public road was, at the place of collision, of sufficient width to permit the defendant, Harry Higgins, to drive upon his right or east half of said public roadway, and if you further find from the evidence that the defendant, Harry Higgins, failed to drive said automobile on the right or east half of said public roadway but instead drove said automobile on to the west half of said public roadway, if you so find, and came into collision with the plaintiff, Curtis Eugene Rehkop, if you so find; * * *."

Defendant's instruction No. 8, which plaintiff claims was an "accident" instruction, reads as follows: "The Court instructs the jury that an accident may happen and a person be injured or killed without anyone being to blame therefor and liable in damages, and that in this case under no circumstances should you return a verdict against the defendant unless you find that the defendant was in fact guilty of negligence as submitted in these instructions which operated directly and proximately to cause plaintiff to be injured."

This instruction is much like the one condemned in Little v. Wilkerson, Mo., 273 S.W.2d 182, where a new trial was granted by the trial court because of giving an accident instruction. This court affirmed the action of the trial court saying that the question at issue was whether or not the defendant was negligent. In Dill v. Dallas County Farmers' Exchange No. 177, Mo., 267 S.W.2d 677, loc. cit. 680, 681(6–9), this court disapproved the giving of an "accident" instruction in cases where the issue to be decided is simply a question of negligence. Note what the court said: "Where the issue, as here, is that one is or is not negligent, the case does not justify a so-

called 'accident' instruction merely because a jury might find a defendant was innocent of negligence. Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S.W.2d 707, 65 A.L.R. 129, and cases therein cited; Wright v. Quattrochi, 330 Mo. 173, 49 S.W. 2d 3; Mitchell v. Dyer, Mo.Sup., 57 S.W. 2d 1082; Brewer v. Silverstein, Mo.Sup., 64 S.W.2d 289; Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355. It has been said that when the cause of the casualty is known it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions to instances in which there is evidence tending to show the cause is unknown, on the theory that the contrary and more abstract course would confuse the jury. Hogan v. Kansas City Public Service Co., supra; Phillips v. Vrooman, supra."

Defendant, in substance, says that the word "accident" as used in the instruction No. 8 has reference to the occurrence wherein plaintiff was injured and does not convey to the average man the idea that the injury was accidental and without human fault. The forepart of the instruction, as we understand it, does convey such an idea. Note its wording: "an accident may happen and a person be injured or killed without anyone being to blame therefor." Instructions of this nature have long been condemned in negligence cases wherein the cause of injury is known and the issue is whether the defendant was or was not negligent. Wise v. St. Louis Transit Co., 198 Mo. 546, 95 S.W. 898, loc. cit. 902(5).

Defendant says that in all of the cases wherein an accident instruction was condemned, the instruction directed a verdict for the defendant in case the jury found the injury was the result of an accident. Instruction No. 8, in the case before us, did not direct a verdict, however, the giving of instruction No. 8 was error when it is considered in connection with instruction No. 9 to which we shall now direct our attention.

Instruction 9 reads as follows: "The Court instructs the jury that if you find and believe from the evidence that as the defendant drove his automobile northwardly on the gravel road described in evidence toward the point where it collided with the plaintiff, Curtis Rehkop, the defendant was at all times using and exercising the highest degree of care in the maintenance of a lookout ahead of his said automobile and laterally thereto, and if you find that the defendant did see the plaintiff, Curtis Rehkop, at his first opportunity, and if you further find that at such time, taking into consideration the position and speed of the defendant's automobile, plaintiff's location in relation thereto, his apparent actions, speed and direction of travel, it would have appeared to a very careful and prudent person in defendant's position that to attempt to swerve the automobile to the left would afford the best opportunity to avoid a collision with plaintiff, and if you find that such a person would have so reacted, then you are instructed that you may not find the defendant negligent because the defendant, upon seeing the plaintiff, first undertook to swerve his automobile to the left rather than to the right, and this is true even though you may find and believe that had the defendant, upon seeing the plaintiff, immediately undertaken to swerve his automobile to the right the collision with plaintiff would have been avoided."

The defendant testified that when he was about 40 feet or so from the truck, the boy ran out from behind the truck toward the point across the road where his grandfather was standing by the tractor; that it was too late to stop so he turned to the left to pass behind the boy; that just as he turned, the boy also turned and started to go north; that defendant swerved to the right and at that point contact was made. Defendant testified that had he swerved his car to the right in the first instance or had he been on the right side of the roadway, the boy probably would not have been hit.

■ The question of whether defendant was negligent in swerving to the left and not to the right when he first discovered plaintiff was not submitted by any instruction except by defendant's instruction No. 9. That question was not submitted as a charge of negligence in instruction No. 1. Instructions 8 and 9, as we view the situation, submitted to the jury an abandoned issue. A jury may well have reasoned that the court instructed them by instruction No. 8 that an accident may happen "without anyone being to blame therefor and liable in damages" and further by instruction No. 9, if defendant in swerving to the left instead of to the right made an error in judgment and was not negligent in so turning his car, no one was to blame and therefore plaintiff's injuries were the result of an accident. Instructions for the defendant on abandoned issues have been held to be misleading and prejudicial. Wallace v. F. Burkart Mfg. Co., 319 Mo. 52, 3 S.W.2d 387, loc. cit. 390(2, 3).

Defendant says that instruction No. 9 was proper because plaintiff submitted a charge of negligence relative to defendant's failure to have his car on the right side of the roadway. The court gave an instruction (No. 10) for the defendant which specifically covered that question. Instruction No. 9 has no bearing on that issue. It is restricted to the question of swerving to the left or right immediately before and at the time the boy was struck. Defendant had admittedly been driving in the center of the road for some distance prior to the collision.

Defendant further seeks to justify instruction No. 9 on the theory that it is a withdrawal instruction. A reading of the instruction will demonstrate that such is not its principal function. The argument made to the jury by the attorney for the defendant indicates that instruction No. 8 was meant to be an accident instruction and that No. 9 was not merely a withdrawal instruction. Note what was said: " * * I do not believe under the evidence that this occurrence as it happened and as it presented itself to Rev. Higgins on that occasion, that you can find that he is to blame for this child being hurt or that it was his fault. He if he has told the truth, if his wife told you the truth and if this Hanson boy told you the truth this was an accident pure and simple and human faults did not enter, and the Court tells you in these instructions, 'that an accident may happen and a person be injured or killed without anyone being to blame therefor and liable for damages, * * *.' " And at another point in the argument, counsel told the jury, "When he was right there with his automobile moving 50 miles per hour, which is 75 feet per second, this little boy appeared, darting out across the road. It was the first warning and first knowledge that he had that the child was there. There were adults there who knew the child was there, but this was a surprise to Rev. Higgins, and if his actions there could have been governed by hindsight rather than foresight, Mr. Luebbert would have stopped the child, but he didn't know the child was going to run out and Mr. Higgins didn't know the child was going to run out. And so the child darted out into the road and in front of this automobile. What was the motorist to do? He told you his first reaction was that his only chance to avoid striking the child was to get back of him and get to the left and I think actually he was too close to have avoided him any way, and anything he could have done—it takes time to see and appreciate danger and to react, and the time just wasn't there. We are not dealing in seconds, it is fractions of seconds."

Instructions 8 and 9 could have misled the jury and caused it to decide the case on an abandoned charge of negligence and to ignor the charges of negligence submitted by instruction No. 1, which were failure to sound a warning, excessive speed, failure to keep a vigilant lookout, failure to reduce speed, and failure to drive on the right side of the roadway.

We are of the opinion that instructions 8 and 9 tended to mislead and confuse the jury and were, therefore, prejudicial.

The judgment is reversed and the cause remanded.

All concur.