CARRIE LOU McKEIGHAN v. KLINE'S INCORPORATED, a Corporation, Appellant.—98 S. W. (2d) 555.

Division One, November 12, 1936.*

*NOTE: Opinion filed at September Term, 1935, March 10, 1936; motion for rehearing filed; motion overruled April 23, 1936; motion to transfer to Court en Banc filed; motion overruled at September Term, 1936, November 12, 1936.

*Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

*Trusty & Pugh, S. L. Trusty* and *Guy W. Green, Jr.,* for respondent.

HAYS, J.—Action for damages for injuries sustained by the plaintiff in falling on the floor of an entrance to one of the defendant's stores in Kansas City, Missouri. From a judgment for plaintiff for $10,000 the defendant appealed.

Defendant occupied two store buildings situated in the interior of the block bounded on the west by Main, on the east by Walnut, on the south by Twelfth, and on the north by Eleventh Street. One building fronted on Walnut and the other on Main, opposite each other and separated by a paved public alley running north and south between Twelfth and Eleventh streets. For the use and convenience of persons desiring to pass from one building to the other, on the ground floor, defendant provided and maintained in the rear end of each building a set of standard swinging doors, with glass in the top panel, affording an opening from a vestibule into the alley. Another set of doors opened from the vestibule into the store proper. The vestibule floor of the east or Walnut Street building sloped downward from the alley level to the level of the floor of the store (degree of incline not shown) and was paved with standard non-slip tile which contained carborundum as an ingredient. Upon this floor in this building the plaintiff fell.

On March 31, 1931, in the noon hour, plaintiff proceeded from the Baltimore Hotel, where she was employed, to defendant's Main Street store to make a purchase. Shortly she passed through that store,

crossed the alley to and entered the vestibule or the alley entrance of the Walnut Street store, and slipped and fell upon the floor.

The petition contained several specifications of negligence. The case was submitted on but one of them, the theory of which may be stated thus:

(1) The defendant, having maintained the vestibule floor in connection with said passway with knowledge of the conditions described hereinafter and of the likelihood of danger arising therefrom to customers passing from one of the buildings to the other by the means provided, is to be charged with constructive knowledge of the conditions existing and of the danger encountered by the plaintiff at the time and place in question, and defendant's failure to remove it or warn of it was culpable negligence. (2) The defendant had prior knowledge of the conditions and danger which plaintiff encountered, in time by the exercise of ordinary care to have remedied or warned of the danger before the occurrence of the injury, and hence was guilty of negligence in failing to exercise such care.

On this theory alone the case was submitted to the jury, after the court's refusal to give an instruction offered by the defendant in the nature of a demurrer to the evidence as a whole. Such refusal is the principal error assigned by defendant (appellant), and will be first considered. We take the facts from defendant's brief and addenda furnished by plaintiff's brief.

Plaintiff had evidence tending to show the alley was much used by delivery trucks in serving, and in parking at the rear of, various stores on either side, but not ordinarily parking within the white lines marking the passage used by persons in crossing from one of defendant's stores to the other. Oil and grease was dropped in the alley by motor cars in such use of it and tracked by their wheels. The two buildings were connected in the upper floors by a structure directly above the surface passway, protecting it from rain to some extent. In that condition of the surface rain would cause oily, greasy and dirty water to flow down the middle or lower portion of the alley and such substance was at times tracked into the vestibule in question from the surface of the alley—particularly in wet weather—by customers and persons using the passway. A great number of persons used it.

Plaintiff testified that as she crossed the alley she observed its condition; the weather was damp, misty, rainy, and snowing some through the day; there were puddles standing in the alley, and a blotch of oil that she avoided; that as she reached the doors of the vestibule no one was ahead of her, except a man who preceded her at a distance the width of the alley; that she pushed and entered by the south or right-hand door; that she took the first step in with her left foot and that when she took the next step, with her right foot,

she "had the sensation of something under my foot—I stepped in something. . . . Immediately—instantaneously—it slipped out from under me with an angle, with the sensation of sliding through something," and that she went down on the floor in an angling position.

Plaintiff's witness, Mrs. Rundus, testified that she had come from the Main Street store through the alley to the Walnut Street store and was directly behind the plaintiff when she was injured, and that the alley was dirty, oily and greasy; that plaintiff took hold of the door and she thought took one step and fell; that where she fell, "there was sort of a line made where your heel slips, you know," it was "not hardly a foot I wouldn't say."

Plaintiff said that as she opened the alley door and started into the vestibule she looked at the floor and that it had "an appearance of a dirty, muddy looking cast on the tile, dirty and dark and black looking tracks." Mrs. Rundus testified that after plaintiff fell and was lying on the floor she noticed that the floor was wet. The driver of the ambulance by which plaintiff left the building testified on plaintiff's behalf that when plaintiff was put in the ambulance he noticed some dirt or something "slimy like grease" on plaintiff's dress at her hip, and plaintiff testified that there was grease on the arm and the bottom of her coat when she was taken to the hospital.

As to her knowledge and observation of conditions the plaintiff said : "Oh, yes," she had been in the Kline's stores before and gone from one to the other across the alley. She knew that the floor was on an incline from the vestibule doors; that when she opened the door to enter the vestibule she was not surprised to see some moisture there and, looking at the floor, it all looked the same as far as the light would permit. She knew that it was usual for customers in considerable numbers to pass from one of the stores to the other by that route all the time. She said that almost immediately after she fell the man referred to above came from the store proper to help her up; she later learned he was the manager of the first floor of the Walnut Street store.

According to defendant's evidence the floor manager, being called to the scene and being the first person to reach plaintiff, saw to her removal to the rest room and called an ambulance. The vestibule was cleaned nightly; also there was a porter on duty on the first floor during the day, who made the rounds of that floor, including the vestibule, from time to time—every hour or so—and cleaned same as necessary. The vestibule floor material was standard and such as is generally used in store entrances that have any incline. On returning at once from the rest room he examined the floor where plaintiff had fallen. He saw no grease or oil or other substance on it. Nor did any witness testify to having seen any on that day. There

was no direct testimony as to how long before the accident any condition of dirt or other substance had existed on the floor.

■ Under the established rule, in determining the propriety of the ruling of the court below on the demurrer, we view the evidence in the light most favorable to the plaintiff in determining its sufficiency to support the verdict.

■ In support of the theory of liability based upon constructive notice of the defendant, plaintiff cites and relies upon many decisions, all but two based upon master-and-servant, employer-and-employee, and public carrier-and-passenger relationships.

Representative of the last-mentioned class is Smith v. Kansas City Pub. Serv. Co. (Mo. App.), 56 S. W. (2d) 838. In that case there was an accumulation of ice on the steps of a street car of defendant on which the plaintiff, a passenger, in alighting slipped and fell and thereby sustained injuries. The length of time the ice had remained on the step was shown and was held to have been sufficient to charge the railway company with constructive knowledge. A cited case similar to that is Vortriede v. St. L. Pub. Serv. Co. (Mo. App.), 58 S. W. (2d) 492.

Typical of the master and servant cases cited is Milzark v. National Biscuit Co. (Mo. App.), 259 S. W. 832. Therein knowledge of a slippery condition of the employer's floor, caused by acts of employees required to drag open cans spilling liquids, was held to be imputable to the master, however short the time before an injury occurred to another employee from slipping on the floor.

The authority especially emphasized in this connection is Tack v. Ruffo (Mass.), 161 N. E. 587. In that case a customer in a meat market slipped and fell to her injury on a short flight of steps leading up to the office of the proprietor and bookkeeper. Immediately the proprietor looked at the steps and said he thought they were greasy. The evidence was that there was an accumulation of grease on the sidewalk in front of the store any day in the week and grease on the floor of the store; that it was usual for customers to go from the store to the office at the top of the steps to pay bills and to see the proprietor. The court held that it could have been found that the condition had existed for such a period of time as to charge the defendant with liability.

With respect to that case it is to be observed that the conditions which were the proximate cause of the injury were produced on the storekeeper's premises and wholly incidental to the *nature and maintenance of his business as he himself conducted it on his own premises.* From the legal point of view, under the facts stated, his situation with respect to constructive notice, perhaps may properly be likened to that of employers as regards safe place and instrumentalities of work, or to that of public carriers to passengers as regards the in-

strumentalities of transportation, but the similitude may not be extended further. In our view of the matter that case is not in principle applicable to the situation before us, as will more fully appear later.

But on the assumption that the decisions reviewed above are in point and determinative here, the plaintiff relies upon the usual condition of the alley as shown, and the defendant's customers' use of it as shown, as being sufficient to charge the defendant with constructive knowledge of the condition and alleged danger of the vestibule floor at the time of plaintiff's injury. The plaintiff directs us to several cases which we will now consider; sketching them briefly one after another: Koonse v. Standard Steel Works Co. (Mo. App.), 300 S. W. 531, an action by a watchman against his employer, for injuries in slipping on scrap iron in the nighttime. The question whether he saw same was held to be one for the jury, as there was evidence the pipe had been there since early morning of the day before. Lock v. C., B. & Q. Ry. Co., 281 Mo. 532, 219 S. W. 919, was a switch tender's action brought under the Federal Employers' Liability Act for injuries received in stumbling over a broken beam. The evidence showed that it was the practice of employees to scatter similar material over the yards in repairing cars. The court held merely that such evidence was admissible as tending to corroborate plaintiff's testimony as to the position of the broken beam at the time. Lowther v. St. L.-S. F. Ry. Co. (Mo. App.), 261 S. W. 702, was an action for injuries to an intending passenger who stepped on a nail on a station platform. It was held that evidence that other nails were on the platform when plaintiff received her injury was competent as tending to show that the particular nail which caused the injury was located on the platform a sufficient length of time for the railroad company to have had notice of its presence. We limit the application of those cases here to the same end the evidence in those cases served therein.

Plaintiff contends the defendant was charged with actual knowledge of the then condition; because (1) the evidence showed that some saleswomen in their work faced the incline which was within their view, and there was a janitor on the ground floor whose continuing duty it was to look after the floor. Plaintiff here cites Varner v. Kroger Gro. & Baking Co. (Mo. App.), 75 S. W. (2d) 585. The evidence in that case was in substance that a banana on which a customer had slipped had been on the floor fifteen minutes while the clerks were behind the counter waiting on customers. It was held the evidence was not sufficient to charge the storekeeper with negligence. In the present case there was no evidence refuting the fact that the first-floor janitor, who testified for plaintiff, made regular and reasonably frequent rounds in looking after the ground floor in gen-

eral and in cleaning the vestibule floor. The view of the floor manager was no better than plaintiff's and the saleswomen were under no duty in that respect. (2) That the first-floor manager passed through the doors and vestibule shortly ahead of plaintiff seems to furnish no reason to assume his observation of the floor gave him any knowledge of its then condition superior to that of plaintiff and Mrs Rundus.

The defendant's position is that plaintiff was not entitled to recover without proving that the substance upon which she slipped was upon the floor for a sufficient time after defendant had actual or constructive knowledge of it for the defendant, in the exercise of ordinary care, to have removed it or warned the plaintiff.

The duty of the defendant does not rest upon the same basis as that of a master to a servant or of common carriers to passengers. The obligations with which a common carrier of passengers is charged are based upon considerations of public policy (4 R. C. L., Carrier, sec. 469), while those of master to servant rest upon his superior knowledge, or the opportunity, by the exercise of ordinary care, to acquire knowledge of the peril incident to the use of the place and instrumentalities of work resulting in the subsequent injury. [18 R. C. L., p. 548.] On the other hand, while tort liability of a landowner to others going upon his premises possibly stems from the maxim which, freely translated, runs thus: So use your own property as not to injure another's, and which was designed to safeguard an adjoining proprietor; yet the owner at old common law was considered to be sovereign over his land and could use it as he pleased. The modern law of negligence, however, has encroached to a considerable extent upon that entrenched position of the possessor upon the older concepts of property law. But it has been well said that "In almost every well reasoned case in which the liability of a possessor is sought to be established, the court will consider the argument as to how far such liability is encroaching upon the traditional position of the possessor." [Mo. Law Review, Jan., 1936—Vol. 1, No. 1, p. 45.] We are of opinion that under the great weight of authority the limit of liability of the defendant, as proprietor, to the plaintiff, as customer invitee, is correctly stated in defendant's position on the law as the same is set out in the above statement thereof. Some of these authorities will now be considered.

"The liability of a possessor of land, who maintains a condition or conducts an activity thereon, for bodily harm caused thereby is governed by the rules which determine liability for negligence, the public interest in his free use of his land being an important factor in determining the reasonable or unreasonable character of the risk which the condition or activity involves." [Restatement of the Law, Torts, p. 984.] "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others

to go upon the premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them. . . . The rule . . . has been invoked most frequently, perhaps, in the case of injuries from unguarded excavations, unprotected stairways, hatchways, trapdoors, turnstiles, revolving or swinging doors, and collapsing buildings.'' [20 R. C. L., p. 56.] ''The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.'' [Id., p. 57.] The thing from which the injury proceeded must have been *in the occupancy and within the control of the* defendant. [1 Thompson on Negligence, sec. 977.]

On this matter of control as such, we are unable to see any distinction between the sidewalk and the abutting street at the front entrance of the store and the public alley at the rear. Defendant did not control the condition of the public alley nor did it maintain that condition. Plaintiff's petition did not charge defendant with any duty to make an inspection of the tiled floor or with any duty in that respect. In Williams v. Kansas City Terminal Ry. Co., 288 Mo. 11, 231 S. W. 954, this court held, in effect, that the mere likelihood that other persons might create a dangerous condition upon the defendant's premises is material only to charge the defendant with the duty to exercise ordinary care to make an inspection and there is no actionable negligence on the part of defendant unless a dangerous condition in fact existed for such a time as to charge defendant with negligence in failing to remedy it; that in order to recover, plaintiff had to establish negligence on the part of defendant in failing to remedy the condition; that to establish such negligence it was necessary for plaintiff first to establish a duty upon the part of defendant to remedy the condition and to establish such duty it was necessary for plaintiff to establish both the actual existence of the condition and actual or constructive notice thereof, in time by the exercise of ordinary care to have remedied or warned of it.

There was no evidence as to how long the condition of the floor as described by plaintiff and Mrs. Rundus had existed before plaintiff entered the vestibule; and there was no physical evidence that it had existed for any appreciable length of time and the evidence with respect to the volume of traffic during the busy noon hour was that it was particularly heavy. The burden was on the plaintiff to affirmatively show the length of time the condition had existed and not upon the defendant, and that matter is left wholly to conjecture. [Shidloski v. N. Y. C. & St. L. Railroad Co., 333 Mo. 1134, 64 S. W. (2d) 259,

532

and cases cited.] The undisputed evidence as to the frequency of cleaning has been stated and need not be repeated.

Another observation made in the Williams case is apropos here. In that case the plaintiff sued for injury sustained in a fall on the steps of the Union Station in Kansas City due to the alleged negligence of defendants in permitting water to remain on the steps. The water on the steps was carried there on the feet and clothing of persons using them on a rainy day in question. The court held that as there was no evidence of knowledge of such condition or how long it had existed the evidence was insufficient to charge defendants with liability. The court said, ''The only way defendants could have made the steps dry by the use of mops, for all of their passengers, would have been to have admitted but one at a time . . . and then followed him all the way down, mopping the steps after them. . . . Defendants were not insurers against all hazards arising from the use of the steps; they were not bound to make them absolutely safe. By equipping them with a safety tread of standard construction, defendant did all, under the circumstances . . . required in order to make the steps reasonably safe from the danger of slipping upon them.'' That case involves the principles of law applicable to this one and is more similar on the facts than any other of those cited by defendant, and for that reason and to avoid further extension of this opinion none of the others will be reviewed and a few of the many will be merely noted here. [Krinard v. Westerman, 279 Mo. 680, 688, 216 S. W. 938; Phillips v. Ry. Co., 226 S. W. 863; Bode v. Wells, 322 Mo. 386, 396, 15 S. W. (2d) 335; Bird v. Ry. Co., 336 Mo. 316, 78 S. W. (2d) 389, 391; Mullen v. Sensenbrenner Merc. Co. (Mo.), 260 S. W. 982, 984; Myers v. Strauss (Mo.), 264 S. W. 801; Main v. Lehman, 294 Mo. 579, 588, 592, 243 S. W. 91.]

Since we are constrained to conclude the demurrer was improperly denied it becomes unnecessary to consider other errors assigned. We hold as a matter of law the plaintiff failed to make a case for submission to the jury. Accordingly the judgment is reversed. All concur.