STATE OF MISSOURI at the relation of TRADING POST COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and ROBERT M. REYNOLDS, Judges of the Kansas City Court of Appeals, and STELLA F. STANFILL.—116 S. W. (2d) 99.

Division Two, May 3, 1938.

589

*Henry S. Conrad, L. E. Durham, Ilus M. Lee* and *Wright Conrad* for relator.

*James R. Sullivan* and *Hume & Raymond* for respondents.

WESTHUES, C.—Relator seeks to quash the record and opinion of the Kansas City Court of Appeals in the case of Stanfill v. Trading Post Company, a corporation, reported in 106 S. W. (2d) 952, on the theory that the opinion is in conflict with controlling decisions of this court.

The plaintiff in that case sued relator, Trading Post Company, to recover damages for personal injuries which plaintiff alleged she sustained as the result of a fall in a store operated by the Trading Post Company. Relator's contention is, that the evidence was insufficient to establish liability on the part of the Trading Post Company, and the holding of the Court of Appeals that it was sufficient, contravened controlling decisions of this court. The facts were stated in respondents' opinion as follows:

"Reverting to the case in hand, the plaintiff, a customer of defendant's store, entered said store for the purpose of making purchase of merchandise. There was a meat counter on the south side of the store. In the center and on both sides of the store there were counters and display racks, upon which groceries and vegetables were on display. On the day in question, February 13, 1935, there is testimony that there was moisture in the air and trace of rain had fallen during the day.

"The plaintiff testified in her own behalf, that at shortly after 6 P. M. she entered defendant's store to make purchases and first went to the meat counter on the south side, and not at the time seeing what she wanted, concluded to go to the south side and market for groceries and vegetables with intent to return to the meat counter later. She further testified that on the way to the south side she slipped and fell on the floor and thereby received the injuries for which she herein complains. The *defendant* (plaintiff) testified that in entering the store, in going to the meat counter and in proceeding to the south side, she did not notice any evidence of the conditions that she claims caused her to slip and fall. She repeatedly reiterated that she did not look at the floor. She testified, 'I wasn't looking at the floor. I was looking at the display of groceries and meats, going to the meat counter.'

"The plaintiff testified that the first notice she had of the condition of the floor was after she started to slip. When asked what caused her to slip and fall she said, 'There was some dirty, bruised, mushy celery stalks and lettuce leaves on the floor.' When asked as to the appearance of the foreign substance on the floor, the witness said, 'Well, it was dark and mashed and the floor was wet and I stepped on it and my foot went from under me and I fell.'

"The plaintiff stated that her left heel slipped about two and a half feet and that there was some of the lettuce leaves on her heel after she fell.

"In cross-examination of the plaintiff, the following questions and answers appear:

"'Q. (BY MR. CONRAD): When you opened the door to enter the store the floor was there open to your vision, was it not? A. Yes, sir.

" 'Q. And as you went into that store did you see any evidence of moisture there? A. Well, I didn't pay any attention to the floor. I was looking across to the meat counter. I didn't look down to the floor.

" 'Q. Did you see whether there was any there at all? A. I didn't pay any attention to it then.

" 'Q. You didn't see any water then as you went into the store? A. I didn't pay any attention to it.

" 'Q. You didn't pay any attention to it? A. No, sir.

" 'Q. But, did you in fact, see any water there? A. No.

" 'Q. Did you observe any evidences of moisture there? A. No, sir.

" 'Q. But as a matter of fact, you knew, did you not, that in all probability there was moisture coming from the street into the store? A. I never thought anything about it.'

"The plaintiff was confronted on cross-examination with what was termed a report of the accident given to two men who called upon her about two weeks after the accident.

"The above is shown to be a report of an interview when plaintiff was in the hospital and was not signed by plaintiff. The plaintiff made denial as having said what was purported concerning condition of floor, and made the statement, 'I don't remember what I answered that day, because I was too sick.'

"We have confined the outline of evidence to the question of the demurrer alone."

The particular point in this case is, was the evidence related sufficient to justify an inference that the vegetable matter was upon the floor a sufficient length of time to impart notice to the operators of the store, causing a failure to remove to constitute negligence? In disposing of this point respondents' opinion states:

"It is shown by the evidence that the vegetables upon display in the vicinity of where plaintiff fell were prepared at another place where the unsalable leaves and stalks were left and the salable produce was placed where they were for inspection and purchase by customers. From this fact, we conclude that the bruised and darkened conditions could be caused by remaining on the floor for such a length of time as to cause this mashed and darkened condition to be occasioned by customers walking on same in making inspection and purchases.

"The above being considered, we conclude that if the most favorable evidence on the part of plaintiff be considered and all contradictory evidence on the part of defendant disregarded, there is shown to have been presented facts that permitted the question of notice to go to the jury. It must be conceded that if the said foreign substance

had been there a sufficient length of time to impart notice, the negligence of defendant is thereby established.''

In another portion of the opinion. the court stated as follows: . .

■ ''It is the law of this State that the duty of storekeeper to customers does not rest on the same basis as that of master to servant. However, the burden is upon the customer sustaining a fall by slipping upon foreign substance on the floor to produce evidence from which notice as to the foreign substance can reasonably be inferred to have been there for a sufficient time to impart notice. [McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S. W. (2d) 555.]''

Relator asserts that respondents' opinion, holding the evidence justified a finding that the foreign substance had been upon the floor a sufficient length of time to impart notice, is in conflict with the holding in McKeighan v. Kline's Inc., supra. In this we think relator is correct. From the view. we take of the two cases, the evidence in the McKeighan case was more potent than that in the case now before us. In the McKeighan case the plaintiff sued to recover damages sustained by a fall in a vestibule of defendant's store. There was evidence that customers had tracked oil and grease into the vestibule from an alley; that it had been raining and the streets and sidewalks were wet; that the plaintiff had something on her clothing, after the fall, which looked ''slimy like grease;'' that there was a mark upon the floor, about a foot in length, made by the heel of plaintiff's shoe, where she had slipped. The plaintiff testified that when she slipped she had ''the sensation of sliding through something.'' This court, in. holding that the evidence was insufficient to make a case for the jury on the question of constructive notice, said: . ''There was no evidence as to how long the condition of the floor as, described by plaintiff and Mrs. Rundus had existed before plaintiff entered the vestibule; and there was no physical evidence that it had existed for any appreciable length of time; and the evidence with respect to the volume of traffic during the busy noon hour was that it was particularly heavy. The burden was on the plaintiff to affirmatively show the length of time the condition had existed and not upon the defendant, and that matter is left wholly to conjecture.''

It will be noted in both instances, that is, when the plaintiff in the McKeighan case fell and when the plaintiff in this case sustained her injuries, that it had been raining and the sidewalks were wet. In the McKeighan case oil and grease had been tracked into a vestibule. In this case plaintiff slipped upon lettuce leaves and a celery stalk. This vegetable matter, after plaintiff's fall, was in a bruised and darkened condition. It is said in respondents' opinion that:

''. . . The bruised and darkened conditions *could* be caused by remaining on the floor for such a length of time as to cause this

mashed and darkened condition to be occasioned by customers walking on same. . . . '' (Italics ours.)

It may be conceded that such an inference *could* be drawn from the evidence, but the length of time necessary to create such a condition would be a matter of speculation. Again other inferences *could* just as well be drawn from the evidence. For example, that plaintiff stepped upon the celery stalk and in mashing it upon the soiled floor rendered it dirty and in a darkened condition; or, perhaps a refuse collector may have dropped some of the unsalable vegetable matter, referred to in respondents' opinion, upon the floor a second, a minute, or an hour before plaintiff fell. It seems to us that this evidence leaves the question of the length of time the vegetable matter was upon the floor, or how it got there, a matter of speculation and conjecture. One guess would be as good as another. We mentioned above that in our opinion the evidence in the McKeighan case was more potent. The reason being that it would take at least some time for customers to track oil and grease from the street into a store. But in this case the vegetable matter, which caused plaintiff's fall, may have been dropped upon the floor a second or two before plaintiff fell. The opinion of this court in the McKeighan case is directly in point and respondents' opinion upon a similar state of facts is directly to the contrary. [2] Again this court has frequently held, in harmony with the well-established rule of law, that a plaintiff in order to recover must introduce evidence that his injuries were sustained through the negligence of the defendant; that where the evidence justifies two inferences to be drawn, one of which would justify a verdict for plaintiff and the other not, plaintiff's case must fail. This court so held in Fryer v. St. Louis-San Francisco Railroad Co., 333 Mo. 740, 63 S. W. (2d) 47, l. c. 55, where this court quoted with approval the following from an opinion by the Supreme Court of the United States:

"As said by the Supreme Court of the United States, in New York Central Railroad Co. v. Ambrose, 280 U. S. 486, 50 Sup. Ct. 198, l. c. 199, 74 L. Ed. 562:

" 'It follows that the verdict rests only upon speculation and conjecture, and cannot be allowed to stand. [Chicago, M. & St. P. Ry. v. Coogan, 271 U. S. 472, 478, 46 Sup. Ct. 564, 70 L. Ed. 1041, and cases cited.]

" 'The utmost that can be said is that the accident may have resulted from any one of several causes, for some of which the company was responsible, and for some of which it was not. This is not enough.' [See, also, Lynch v. Delaware, L. & W. Railroad Co. (C. C. A.), 58 Fed. (2d) 177; Pennsylvania Railroad Co. v. Chamberlain, 288 U. S. 333, 53 Sup. Ct. 391, 77 L. Ed. 819.]''

That was a case under the Federal Boiler Inspection Act, but the rule is the same in ordinary negligence cases. [See·Fritz v. St. Louis, I. M. & S. Railroad Co., 243 Mo. 62, 148 S. W. 74, l. c. 78; Coble v. St. Louis-San Francisco Railroad Co., 38 S. W. (2d) 1031, l. c. 1036 (4, 7); Doughton v. Marland Refining Co., 53 S. W. (2d) 236, l. c. 241 (4-6), 331 Mo. 280.]

Attorneys for respondents have cited a number of cases in support of their theory that the evidence justified a finding that the vegetable matter had been upon the floor a sufficient length of time to impart notice to the defendant. We do not find these cases authority for their position because the facts were materially different. For example, in Harrison v. St. Louis-San Francisco Railroad Co., 99 S. W. (2d) 841, 339 Mo. 821, the existence of a dip in the railroad track was the cause of an accident. It was shown by the evidence that it would take weeks and months for such a dip to accumulate. In Doyle v. St. Louis Merchants' Bridge Terminal Railroad Co., 326 Mo. 425, 31 S. W. (2d) 1010, the plaintiff tripped over a wire in the railroad yards. It was shown that the wire had been firmly embedded in the ground; that the ground had been worn solid at this point by use, justifying only one inference, that the wire had been there a long time. No such circumstances, or facts, were proven in the case now under consideration.

It is our conclusion that respondents' opinion is in conflict with the opinion of this court in the case of McKeighan v. Kline's, Inc., supra, as well as other cases. The record and opinion of the Court of Appeals must therefore be quashed. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES C., is adopted as the opinion of the court. All the judges concur.