Florence Van Brock v. First National Bank in St. Louis, a Corporation, Appellant.—161 S. W. (2d) 258.

Division Two, March 13, 1942.

Rehearing Denied, May 5, 1942.

Motion to Transfer to Banc Denied, May 5, 1942.

*Jones, Hocker, Gladney & Grand, Web A. Welker* and *Vincent L. Boisaubin* for appellant.

*Paul H. Koenig* and *Chelsea O. Inman* for respondent.

427

 BARRETT, C.—The plaintiff, Florence Van Brock, recovered a judgment of $11,000.00 against the First National Bank of St. Louis for personal injuries.

The plaintiff claimed that while she was an invitee in the defendant's bank she was caused to slip and fall by reason of negligence on the part of the bank or its employees. The theory of her case, as stated in her petition and as hypothesized in her instructions, is that "the defendant was negligent in failing to exercise ordinary care to have, keep and maintain the tile floor . . . in a reasonably safe condition for the use and convenience of its customers, patrons, invitees . . . in that, water, soap and other slippery substances were allowed, suffered and permitted to collect, accumulate, and remain on the floor . . . which condition rendered the floor . . . slick and slippery . . . and that defendant knew, or by the exercise of ordinary care could have known of said condition . . ." [2 Restatement, Law of Torts, sec. 343; 38 Am. Jur., secs. 96-102, 131-133; 118 A. L. R. 425; 100 A. L. R. 710; 58 A. L. R. 136; 46 A. L. R. 1111; 43 A. L. R. 866; 33 A. L. R. 181.]

The floor of the First National Bank in St. Louis is described as being of tile or marble tile. Every business day, under the direction of the building superintendent, the floor and corridors are cleaned between midnight and 4:30 or 5:00 o'clock in the morning. Water and a cleaning agent, a powdered detergent bearing the trade name of "Wyandotte," are mixed in the proportion of three pounds of Wyandotte to twenty or thirty gallons of water. The mixture is stirred with a stick and placed in an electric washing machine. As the machine is pushed across the floor its rotating brushes scrub with the mixture. Other employees follow the machine and mop the floor dry with mops. According to the plaintiff's evidence Wyandotte powder contained a large amount of soap, soda ash and friable grit, insoluble in water. When wet it forms a jelly or lubricant and is slippery. It is whitish gray when dry. According to the defendant's chemical analysis Wyandotte consists of eighty per cent inert material which looks like volcanic ash and 5:14 per cent soap and the balance a mixture of soda ash and sodium bicarbonate. The defendant's evidence tended to show its qualities were of an abrasive nature and not lubricating. Its tests showed there was very little difference in the slipperiness of a marble floor cleaned with Wyandotte detergent and a marble floor cleaned with plain water.

The plaintiff and her mother had a joint account in the bank. With a neighbor, Mrs. Milick, they went to the bank on November 24, 1936, for the purpose of having the mother's will typed. After talking to a lady in charge of the notary public's counter the plaintiff went out to have the typing done, after some suggested changes, and as she was returning to the place in the bank where her mother was waiting she slipped and fell. The fall occurred about 10:45 or eleven o'clock

in the morning. The evidence which is the crux of this appeal is as follows:

"... As I got to this cage my right foot slipped out from in under me and the left foot clean under—I sat on it and I almost pulled Mrs. Milick down with me.

"Q. The right foot went out and the left foot went under? A. The right foot went straight out.

"Q. The left foot went under? A. The left foot went under.

"Q. And you sat right down on it? A. Yes, sir. Then Mrs. Milick, first she tried to help me up on the left arm and she couldn't; so she stepped back and Mr. Chandler from the bank came over and he took me on the left arm and I tried to help boost up with my right hand, and as I did that, I felt something queer on the floor; it felt sticky like, just like, I don't know, like you see poured on real thick.

"Mr. Welker: I ask that the conclusion be stricken. . . .

"The Court: Sustained as a conclusion. . . . .

"... As I got outside the door I felt a queer feeling on my leg.

"Q. On which leg? A. On the right leg.

"Q. What part of the leg? A. Back here.

"Q. You are indicating the outer side of the right leg? A. Yes, sir. And then I thought the stocking was tore, and so, of course, I stopped and I looked like this and felt, and I had gun-metal stocking on—gray—dark gray and it was much darker; the stocking was almost black where that was on there.

"Q. Describe that as it looked on there and the size of it. A. It was right over the edge of the slipper—you see, I had a black suede slipper on, and it was right over the edge of the slipper at the top, up—

"Q. Up to where? A. Up to about there.

"Q. The calf of the leg? A. Yes, sir.

"Q. And about how thick? A. About that wide.

"Q. Indicating about an inch. A. About an inch I guess. . . .

"Q. What did it look like at that time? A. Then I wanted to show it to him and I looked and I discovered it was a different color; it was whitish.

"Q. Turned whitish? A. Kind of real light gray, whitish . . .

"Q. It was whitish like? A. Yes.

"Q. Was it still damp? A. Just damp a little bit, not very much. Like I say, when it was dry, it was whitish . . .

"Q. How was it with reference to softness? Describe it as to any stiffness or softness. A. Well, just like you were—this here washing powder, when it is wet and then when it drys, that is the way it looked and that is the way it felt.

"Q. Did you have a chance to feel that on the floor, too, when you were able to life yourself up? A. Yes. You know, because I went

like this (indicating) and rubbed it on my dress like that (indicating), you see, and I didn't say anything about it.

"Q. Describe how it felt in your hand. A. Sticky like.

"Q. Do you know what it was? A. Oh, yes, because I used that all the time. .

"Q. What was it? A. Well I really don't know, just because there is so many of them cleaning fluids, you know, and cleaning substances—there are many new in that . . .

"Q. How did it feel to you? A. Well, just like I said, you take water and wet it and after it begins to get dry, it was sticky.

"Q. What kind of powder? A. Washing powder; any kind of washing powder will do it . . .

"Q. Did your stocking, to your knowledge, come in contact with anything else other than the place where you fell? A. No, sir . . ."

The following occurred on cross-examination:

"Q. Well, now, when, for the first time did you tell him that there was anything like scouring powder, or soap, or anything like that on the floor? . . . A. I told him it was something; it was water, but after it was wet—I mean on my hands, it was sticky, but I couldn't imagine what it was on my hand, because it was slippery and sticky when it was wet, but after I seen the stocking was wet, when it was dry I figured it was soapsuds. . . .

"Q. But just exactly what it was, of course, you didn't know? A. Well, I knew it was something. Well, you see, when you wash clothes in washing there is—

"MR. WELKER: Just a moment. Answer the question. MR. KOENIG: Let her explain.

"THE COURT: That isn't responsive to the question. MR. WELKER: That isn't responsive to the question.

"Q. (By MR. WELKER): So far as knowing what it is, you don't know, do you? A. Well, from my past experience I know it was—

"Q. *You know it was what?* A. *Now I know it was sticky—some kind of soapsuds.*

"Q. *Some kind of soapsuds?* A. *Yes, sir*; something sticky, because it was hard and when it was dry, on the stocking—

"Q. Did you wet it again to see—? A. Oh, no. I saw it when it was wet."

The defendant bank contends its demurrers should have been sustained for the reason the plaintiff failed to make a case of negligence in that there was no proof it "allowed, suffered and permitted water, soap and other slippery substances to accumulate and remain on the floor" and no proof that it "knew" or "could have known" of such condition. In legal terminology the defendant's contention is that the jury's finding of liability is based on speculation, guesswork and conjecture; that the ultimate facts necessary to be found—that the bank or its employees left some of the Wyandotte detergent on the

floor—that the defendant knew it—that it was wet and slippery and was the thing causing the fall, can be indulged and found only by piling inference upon inference.

There is and can be no objection to the fact that some material, essential element of a plaintiff's case, or a defense, is not proved by definite, affirmative testimony but is found by the jury's verdict presumably by reasoning or inferring from a fact, or testimony as to a specific subject, or even from circumstantial evidence, that a certain required thing or fact existed or was true. As Thayer points out, some questions are neither of law nor of fact but of reasoning. " 'It is the office of jurors to adjudge upon their evidence;' so the court is reported to have said in Littleton's case. That remark brings out a fundamental point, so obvious as hardly to need stating; namely, that it is no test of a question of fact that it should be ascertainable without reasoning and the use of the 'adjudging' faculty; much must be conceived of as fact which is invisible to the senses, and ascertainable only in this way. Of course, by the judges this function of reasoning has constantly been exercised; the sentence just quoted makes it apparent that it must also be discharged by juries. We are not, then, to suppose that a jury has ▮▮▮▮ found all the facts merely because it has found all that is needed as a basis for the operation of the reasoning faculty; *the right inference or conclusion, in point of fact, is itself matter of fact, and to be ascertained by the jury.* As regards reasoning, the judges have no exclusive office; the jury also must perform it at every step." [Thayer, Preliminary Treatise on Evidence, pp. 193-194.] "It is well settled that any number of inferences may be drawn in a given case so long as each has a factual foundation." [Wills v. Berberich's Delivery Co., 345 Mo. 616, 625, 134 S. W. (2d) 125.] The defendant objects, however, that an ultimate or required fact cannot be found by basing one such inference upon another. It is doubtful that there is any such rule of evidence or practice. [1 Wigmore, Evidence, sec. 41, pp. 434-440.] But, if it exists it is merely a phrase or legal slogan meaning that "an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility," or that an inference must be supported by a known or established fact. Perhaps it is a convenient way of guarding against what the court considers "attenuated reasoning" or of disposing of evidence which the court regards as too remote or uncertain or lacking sufficient probative force to establish or prove the ultimate fact at issue. [95 A. L. R. 162-196; Wills v. Berberich, supra.]

And, in its last analysis, that is exactly what the defendant contends—that the plaintiff's evidence is so remote, speculative and uncertain that it has no probative force. Or, to state the problem in a different manner, that this court should not permit a jury to reason or find liability from such a set of unreliable circumstances. So, con-

sidering the rules with respect to inferences as we have suggested, but keeping in mind the jury's finding and construing the evidence, or drawing our own inferences, in accordance with the tests and rules applicable immemorially in such instances what is our conclusion?

Some of the facts essential to liability are established by positive testimony. Even the defendant does not deny but that Mrs. Van Brock fell while she was a business invitee in the bank and that her injuries resulted from the fall. While these facts are essential they do not, of course, in and of themselves create liability; the defendant is not an insurer of the safety of its business invitees—its only liability is for negligence. And the plaintiff must sustain the burden of proving the negligence complained of. [Ilgenfritz v. Missouri P. & L. Co., 340 Mo. 648, 101 S. W. (2d) 723; Cluett v. Union Electric L. & P. Co. (Mo. Sup.), 220 S. W. 865; McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S. W. (2d) 555.] The bank did clean its floor with a solution of Wyandotte detergent and water following each business day. November 24, 1936, fell on Tuesday. There was evidence from which a reasonable person could find that such a solution was wet, sticky and slippery when applied to the marble tile floor and permitted to remain. When the plaintiff fell she felt something "queer," "sticky like" on her hand and she rubbed it off on her dress. Her stocking was wet with some substance which had a whitish cast when it dried. Under all the positively established facts and the circumstantial evidence in this case the jury could and did draw the reasonable inference—and it seems to us the only inference that was drawn by them—that a quantity of the solution composed of Wyandotte detergent and water was left on the floor from the previous night's cleaning. [Petera v. Railway Exchange Bldg. (Mo. App.), 42 S. W. (2d) 947; Phelps v. Montgomery Ward & Co., 231 Mo. App. 595, 107 S. W. (2d) 939.] As Judge RAGLAND said in Busby v. Southwestern Bell Tel. Co., 287 S. W. 434, 437-438:

"It is contended by appellant that inasmuch as there was no specific proof that the steps were washed on the particular day on which plaintiff received her injury, at any time prior to the occurrence, the evidence wholly fails to show that the wet and slippery condition of the step was caused by defendant, and that if such condition was brought about by some other and independent agency defendant cannot be held responsible therefor, unless knowledge of its existence be brought home to it. There was evidence that the steps were washed daily, at any hour of the day, and that they remained wet for two or three hours thereafter. In the absence of any suggestion in the evidence that the steps were ever made wet except by washing, the jury could very properly infer that that was the cause of their being wet at the time of the plaintiff's fall. And the washing of the steps, in so far as it resulted in bringing about a condition which rendered the use of the steps less safe for employees, was the act of defendant itself."

There are some distinguishing features in the above cases and the instant one in that in some of ▆▆▆▆ them the plaintiff looked at the floor and could see the marks of her shoe and the place it slipped on the floor. This, together with the inference that the defendant or its employees left the substance on the floor and the fact that Mrs. Van Brock did not look at the floor and no one saw anything on the floor, might and probably should defeat the plaintiff's right of recovery and even destroy the theory of her case except for the fact that upon her cross-examination when asked "But just exactly what it was, of course, you didn't know?" She answered: "Now, I know it was sticky—some kind of soapsuds." She had previously said the something she felt on her hand and saw on her stocking looked and felt like washing powder. In short, from all the facts and circumstances in this case the jury could reasonably infer that some of the mixture consisting of the cleaning powder and water was left on the floor and remained there from early in the morning and that the plaintiff fell from stepping and slipping on it. The circumstances are not comparable to an instance of the floor's not having been oiled or cleaned with the substance in question for nineteen days previously. [Achter v. Sears, Roebuck & Co., 232 Mo. App. 915, 105 S. W. (2d) 959.] Neither is it comparable to an instance of complete failure to prove the fall was due to the condition complained of. [Cluett v. Union Electric L. & P. Co., supra.] Nor is it an instance of there being no proof as to the length of time the substance had been on the floor—especially when the proof was that it was such a thing as a customer or someone else could have dropped or left on the floor as was true of the celery stalks and lettuce leaves in State ex rel. Trading Post v. Shain, 342 Mo. 588, 116 S. W. (2d) 99, though a contrary inference could be drawn, and the oil or grease in McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S. W. (2d) 555. The plaintiff's proof does not have to exclude the possibility of accident or of some cause or fact for which the defendant is not liable, but it is sufficient to make a case invulnerable against demurrers if there is substantial evidence from which the jury may find the injuries proximately resulted from a negligent cause for which the defendant is liable. [Stewart v. Laclede Gas Light Co. (Mo.), 241 S. W. 909; Cech v. Chemical Co., 323 Mo. 601, 20 S. W. (2d) 509.]

▆▆ If it is a legitimate inference that the wet and slippery substance was put there by the bank's employees charged with the duty of cleaning the floors the act and knowledge of such employees would be the act and knowledge of the bank, and the plaintiff thereby sustains her burden of proving notice or facts from which notice follows. [Savona v. May Department Stores (Mo. App.), 71 S. W. (2d) 157; Busby v. Southwestern Bell Tel. Co., supra; State ex rel. Trading Post v. Shain, supra.] If a finding of the substance on the floor is permissible as the proximate cause of the fall, then, of course, the case

is unlike the polished or waxed slick floors in Stoll v. First National Bank, 345 Mo. 582, 134 S. W. (2d) 97, and Ilgenfritz v. Missouri P. & L. Co., supra, but then becomes an instance of an invitee reasonably expecting to find one condition—a floor with no hazardous, foreign matter on it—and finding another—a floor with a slippery soap substance on it likely to cause a fall and injury. [Long v. F. W. Woolworth Co., 159 S. W. (2d) 619; Ilgenfritz v. Missouri P. & L. Co., supra.]

In many respects one such case is not a binding precedent for another. It is simply our view, in the instant case, that the facts proven by positive testimony and circumstantially are of such value and probative force that the jury could and had a right to reason from them and infer other facts which create liability, just as it could have arrived at a contrary result. All we are deciding or concluding is that under all the facts and circumstances, in the instant case, the plaintiff sustained her burden of adducing such evidence as to warrant the court in submitting its persuasiveness as to negligence and proximate cause to a jury. This is a case in which the court "in handling the keen edged instrument" (demurrer to the evidence) cannot assume that "what the court thought the right inference was the only one allowable to the jury." [Thayer, Preliminary Treatise On Evidence, p. 238.] The demurrers were properly overruled and the judgment is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.