**Leonore BURCH, Respondent,**

v.

**MOORE'S SUPER MARKET, INC.,
Appellant.**

**No. 51353.**

Supreme Court of Missouri,

Division No. 1.

Dec. 13, 1965.

Motion for Rehearing or to Modify or to
Transfer to Court En Banc

Denied Jan. 10, 1966.

Roberts & Roberts, Farmington, by Raymond R. Roberts, Thomas A. Mathews, Farmington, for plaintiff-respondent.

E. L. McClintock, Jr., Flat River, Leritz & Leritz, J. L. Leritz, J. D. Leritz, St. Louis, for defendant-appellant.

HOUSER, Commissioner.

Action for $25,000 damages for personal injuries alleged to have been sustained when plaintiff fell on ice on the parking lot of a supermarket. A trial jury returned a verdict for the defendant store company. The trial judge set aside the verdict for error in giving Instruction No. 5 and for the reason that the verdict "is against the weight of the evidence."

On this appeal defendant seeks to reverse the order granting a new trial, contending that plaintiff failed to make a submissible case; that its motion for a directed verdict at the close of the case should have

been sustained, and therefore the granting of a new trial following the verdict for defendant was arbitrary and an abuse of discretion under the rule announced in Rose v. Thompson, 346 Mo. 395, 141 S.W. 2d 824, 827. Defendant says plaintiff failed in three respects: (1) failure to prove actual or constructive notice to defendant of the presence of the patch of ice on the parking lot where plaintiff fell; (2) failure to prove a set of facts from which a duty arises to remove the danger or warn a business invitee, since the patch of ice where plaintiff fell was "open and obvious and could have been seen as readily by respondent as by appellant"; (3) that plaintiff was guilty of contributory negligence as a matter of law for failure to look where she was walking as she walked from the store to her automobile.

Defendant's store faces north toward the street. The store entrance is at the northeast corner. North of the store building, between it and the street, there is a smooth blacktop asphalt parking area. On Thursday or Friday, December 7 or 8, 1961 a heavy snowstorm covered the parking lot and surrounding area with snow. On Saturday, December 9 defendant caused the snow to be pushed off the parking lot by means of a blade attached to a tractor. This will leave a certain amount of snow in the low spots but, according to defendant's manager, traffic on that will "slosh it out." It was normal procedure for the management of the store in inclement weather to inspect the parking lot and defendant's manager testified that "if it needs attention, why, we see that it gets it." It was defendant's custom in case of ice and snow near the door of the store in the area where plaintiff's car was parked to apply salt but defendant's manager could not answer "yes or no" when asked whether he inspected the lot or put out salt or chat or anything on the driveway on December 12 or on any particular day. Plaintiff's fall occurred on Tuesday, December 12 at 1 or 1:30 p. m. On December 11, two days after the lot had been "bladed," witness

Sutton drove past defendant's store in the morning and in the afternoon and observed ice spots, some large and some small, located on the north side of the store building in the parking area between the street and the building. These patches were 1 to 2 feet in size. Some of them were 10 feet from the store entrance. Witness Sutton saw these spots again on December 12. At 8:30 or 9 a. m. on the day plaintiff fell witness Laird looked across the street from a drive-in where he was having coffee and observed some patches of ice on the parking lot north of the store building, between the building and the street. He testified that "a large area was covered where the accumulation had gathered between the highway and the parking area," and that it "had sloshed up in rows" in "quite an area," probably one fourth of the area in front of the building but mostly on the part farthest away from the building and nearest the street. He said there was a strip of it 10 or 12 feet wide running east and west, located possibly 10 or 15 feet north of the building. It was ice and it was plainly visible. On that same morning defendant's manager parked his car behind the store building and walked along the east side of the building to the entrance at the northeast corner. He did not know whether he saw ice then.

Plaintiff, a 59-year-old woman, accompanied by a friend named Mrs. Dittmer, drove onto defendant's premises to do some shopping and parked her automobile on defendant's parking lot 8 or 10 feet from the entrance at the northeast corner of the store, facing the store. There was only one other automobile parked on the lot at that time. She was familiar with the lot, having been "in and out of there" numerous times, and knew that ordinarily the parking lot was smooth asphalt. The weather was cold. It was freezing at the time. Although it warmed up during the day the temperature did not get above freezing. The two women alighted from the automobile and walked to the store, entered and both of them bought groceries. Plaintiff

testified that as she walked from the store entrance to the automobile she did not look where she was going; that she knew it had snowed and that there was snow and ice "in the neighborhood" but that as she stepped onto the parking lot she made no observation as to where she was stepping. After making her purchases plaintiff and Mrs. Dittmer walked from the store to the automobile, plaintiff carrying a large paper sack of groceries "up in her arms," out in front of her. The groceries weighed 8 or 9 pounds. She walked to the left rear door of the 4-door vehicle and fell as she was reaching with her right hand for the door handle. After she fell she noticed an area of slick ice on the parking lot, 18 to 24 inches east of her automobile, variously estimated at between 12 and 20 inches in diameter. There was no snow and there were no marks on the ice spot in question. Plaintiff first observed this spot or patch of ice after she had fallen. Neither plaintiff nor Mrs. Dittmer had observed any ice or snow on the parking lot as they drove onto the lot, or as they walked to the store entrance, or as they returned from the store to the automobile. As plaintiff got out of the automobile and as she walked to the store she did not look where she was stepping. As she walked from the store entrance to the automobile she did not look where she was going. At no time, going from or returning to the automobile, did she look at the parking lot to observe its condition. Asked whether she could have seen the patch of ice if she had looked to the ground plaintiff answered, "Yes, if— I imagine if I'd of been walkin' along lookin' down I would of seen it." She conceded that there was no obstruction to prevent her from seeing it; that it was clear daylight at the time.

Ten or fifteen minutes after the accident Laird returned to the scene. Much of the ice had been "beaten off" by automobiles but some of the spots of ice he had observed that morning were still there, and there was some snow piled up at the "ends" of the parking lot. The ice next to the roadway "had been pretty well beaten off."

■ On the question of notice, was a submissible case made to show that the defendant had knowledge, actual or constructive, of the dangerous condition in time by the exercise of ordinary care to have remedied the condition before the occurrence of the injury? Defendant asserts that plaintiff failed to sustain the burden of proof resting upon her to establish "by substantial legal evidence when and under what circumstances the ice located where [she] fell occurred"; that there was no reliable testimony as to the temperature between Saturday, when the snow was bladed off the lot, and Tuesday, when plaintiff's fall occurred; nothing to show whether the temperature in the meantime would have permitted the snow to melt and then to form ice; nothing to show that the temperature was below freezing during that period; nothing upon which the jury could base a finding as to when the spot of ice was formed and whether it had been present long enough to give defendant constructive notice. Defendant suggests that the ice could have formed as a result of spilling liquid on the lot, or from a radiator leak, or the drippings from the undercarriage of a parked car and that plaintiff's evidence leaves the matter in the realm of guess and speculation.

Defendant further contends that the testimony of the witnesses Sutton and Laird is "entirely at odds," "wholly inconsistent and at war," with plaintiff's testimony; that their versions of the facts are wholly at war with each other, and that their testimony is of no aid to plaintiff in proving her case. Plaintiff, however, did not testify that the snow and ice seen by Sutton and Laird was not there, but only that she did not observe it. We find no irreconcilable inconsistency.

In our judgment a submissible case of constructive notice was made. From the evidence we have recounted the jury could have found that defendant recognized the

dangerous condition of the parking lot with spots of snow and ice on it, having in mind the admitted custom of defendant to salt icy spots; that defendant through its manager and vice-president knew that the process of pushing the snow off the parking lot would occasionally leave spots of snow in various low places, and that while the manager considered that this is ordinarily "sloshed out" by traffic, he did not know whether it would be "sloshed out" in freezing weather; knew or in the exercise of ordinary care could have known that it was freezing, not moderating, weather; that several clearly visible ice spots of from 1 to 2 feet in size existed at 8:30 or 9 a. m. on the day plaintiff fell, four or five hours prior to the event; that these dangerous spots were there on the previous day, but that defendant made no inspection of the conditions on the parking lot on the day in question prior to plaintiff's injury, did not cause the icy spots to be salted, and took no other precautions to protect its business invitees from danger. From these facts it could reasonably be inferred that the icy spot on which plaintiff fell had existed on the parking lot for a sufficient length of time for defendant, in the exercise of ordinary care, to have known of its presence and to have salted it or otherwise removed it or warned plaintiff of the dangerous condition.

Appellant cites a number of cases in support of its position on the matter of notice, but their facts are so materially different from the instant facts that they do not constitute authority for their position. For instance, in State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 116 S.W.2d 99, the evidence left to speculation the question of the length of time the vegetable matter was upon the floor or how it got there. In Robinson v. Great Atlantic & Pacific Tea Co., 347 Mo. 421, 147 S.W.2d 648, there was no evidence as to how the box of sweet potatoes materialized on the floor or that it was there more than 10 or 15 minutes. In Richardson v. Safeway Stores, Inc., Mo. App., 379 S.W.2d 827, a customer stepped on a bone on the store floor and fell, but there was no evidence of the length of time it had been there or how it got there.

In the case now here for review we rule that it was a question of fact, not of law, whether this defendant should have anticipated, discovered and remedied the dangerous condition.

Defendant's other contentions are that the dangerous condition was open and obvious to plaintiff and that she was guilty of contributory negligence as a matter of law. Defendant proposes that there was no legal duty on defendant to warn plaintiff of the dangerous condition and that plaintiff cannot recover in any event because of her own negligence, under her admissions that she could plainly see the patch of ice; that there was nothing to hide its slippery appearance; that she did not see it before she fell; that she did not look at the parking lot to observe its condition but that if she had looked to the surface of the parking lot she would have seen the patch of ice.

■ On the questions of open and obvious condition and contributory negligence the court should not under these facts declare as a matter of law that the presence of the patch of ice was obvious or as well-known to plaintiff as to defendant or that plaintiff was guilty of contributory negligence. Viewing the evidence in the light most favorable to plaintiff and giving her the benefit of the favorable inferences to which she is entitled these are questions of fact for the jury.

■ Plaintiff testified that when she drove onto the lot at 1 or 1:30 p. m. she did not see any ice. While there was evidence that there was considerable ice and snow on the lot that morning at 8:30 or 9 a. m. there was evidence that later in the day, 10 or 15 minutes after plaintiff fell, most of it had been beaten off by automobile traffic. The jury could have found from the evidence that at the time plaintiff drove onto the lot at 1 or 1:30 p. m. there was little or no ice to see or, if the jury

believed that some ice and snow were still there, could have found that the two women, intent on their shopping mission, simply failed to observe whatever accumulations of ice and snow remained. (Plaintiff testified "We were just talkin' and I just drove in.") Also, in view of the testimony that most of the accumulations were nearest the street (away from the building) the jury may have excused her failure to see the accumulations "sloshed up in rows" on that part of the lot nearest the street by reason of the fact that she parked her automobile nosed into the building and not near the street. The comparatively small size of the patch of ice on which she fell and its location adjacent to the left *rear* door of her automobile was such that a jury could rationalize that plaintiff was justified in not having seen it as she parked and went into the store. As far as plaintiff understood as she entered the store the situation was that the pavement was clear. Not having been conscious of the existence of ice as she came onto the parking lot and as she walked the 8 or 10 feet from her parked car to the entrance to the store—and having negotiated that short distance safely on arrival—she had no reason to anticipate the presence of ice on that route as she returned to her automobile. She had shopped at this store on prior occasions and was fully acquainted with the fact that the usual condition of the surface of the parking lot was smooth asphalt paving. From the foregoing the jury could have found that plaintiff was not negligent in not constantly watching her footsteps. As plaintiff left the store she was carrying a large, heavy paper sack of groceries, which she was supporting in her arms. The jury could reasonably have excused her admitted failure to "look down" and notice the small patch of ice because of the burden that she was carrying, the large shopping sack, which could have interfered with her ability to see the surface of the parking lot. It was while she was shifting this burden to her left arm in an attempt to open the automobile door with her right hand that she fell. Under all the circumstances we are of the opinion that whether the icy condition was so open and obvious as to excuse defendant from any duty in the matter was a jury question. Willis v. Rivermines I.G.A. Supermarket, Mo.App., 350 S.W.2d 437[3].

■ That plaintiff was guilty of contributory negligence as a matter of law should not be declared in a situation such as this unless the danger involved was "so obvious and glaring" that a reasonably prudent person would not use the facility. Evans v. Sears, Roebuck & Co., Mo.App., 104 S.W.2d 1035. Under the facts as analyzed in the preceding paragraph we cannot say as a matter of law that the dangerous condition resulting from the patch of ice in question was so obvious and glaring that a reasonably prudent person would not have used the parking lot in the manner in which plaintiff used it. Evans v. Sears, Roebuck & Co., supra; Daggs v. Patsos, Mo.App., 260 S.W.2d 794. There was no abuse of discretion in setting aside the jury verdict and granting a new trial for failure of plaintiff to make a submissible case.

Appellant has not undertaken to defend Instruction No. 5, which the court found faulty, or to challenge the other reason the court gave for its action, namely, that the verdict is against the weight of the evidence, and it is not our function to volunteer for duty in this connection.

Respondent's motion to dismiss the appeal for violation of the rules, considered, is overruled; the judgment is affirmed, and the cause is remanded for a new trial.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.